IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF MICHIGAN<br>2966 Woodward Avenue<br>Detroit, MI 48201; and<br><br>AMERICAN CIVIL LIBERTIES UNION FUND OF MICHIGAN<br>2966 Woodward Avenue<br>Detroit, MI 48201;<br><br>    Plaintiffs,<br><br>    v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT<br>500 12th Street, SW<br>Washington, D.C. 20536; and<br><br>DIRECTOR OF U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, in their official capacity<br>500 12th Street, SW<br>Washington, D.C. 20536; and<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY<br>245 Murry Lane, SW<br>Washington, D.C. 20528; and<br><br>SECRETARY OF U.S. DEPARTMENT OF HOMELAND SECURITY, in their official capacity<br>245 Murry Lane, SW<br>Washington, D.C. 20528;<br><br>    Defendants. | Case No. 1:25-cv-00184 |

**COMPLAINT**

1.  Public scrutiny of government conduct is a hallmark of our democracy. This is especially so for jails, prisons, and immigration detention centers, where government officials have

1

almost total control over the daily lives of incarcerated people—and where they exercise that control behind closed, locked, and guarded doors.

2. For decades, state and federal public records laws, such as freedom of information acts (FOIAs) and right-to-know laws, have helped the media and public at large uncover and scrutinize government conduct (and misconduct) behind bars. These laws have also served as crucial tools for attorneys and advocates to obtain records related to the treatment of their detained clients.

3. These laws require both state and federal agencies to disclose records about detention. County jails across the nation regularly disclose records related to the people they detain under state public records laws. Michigan's FOIA, for example, makes most county jail records readily available to the public, subject to limited exemptions. And the federal FOIA likewise requires federal agencies to produce information about the people they detain, and about what happens inside their detention facilities.

4. Despite these clear mandates, Immigration and Customs Enforcement (ICE) has increasingly taken steps to conceal records related to the thousands of detained immigrants who are held each day by county jails under contract with ICE.[1] County jails routinely create records related to detained immigrants, such as intake, medical, disciplinary, and grievance records, as well as communications with jail staff. These records are typically subject to Michigan's state FOIA law. And ICE itself generally does not possess these records—only the county, which created the records, does. But critically, ICE instructs these county jails to withhold these records in response to state-law records requests, rendering most information about these detained immigrants completely secret. A huge aspect of ICE detention is hidden in a black box.

---

[1] The term "detained immigrant," as used throughout this Complaint, refers only to noncitizens or alleged noncitizens detained for civil immigration enforcement purposes by or on behalf of ICE.

5. ICE has achieved this secrecy by invoking an obscure federal regulation, 8 C.F.R. § 236.6 (the "Records Rule"). The Records Rule states that detention contractors, such as county jails, should not disclose information relating to detained immigrants, and should instead consider such information to be in under ICE's control, subject to public disclosure under federal law only. But because ICE does not actually possess most of these records, it is not disclosing them in response to federal FOIA requests.

6. ICE's actions have prevented detained immigrants, their attorneys, and the public from obtaining information about critical aspects of ICE detention. In multiple recent cases, Plaintiffs and others have requested records under both federal and state FOIA statutes about deaths in custody, ICE's erroneous detention of U.S. citizens, and other matters of public concern. The county jails have denied these requests, citing the Records Rule and directing Plaintiffs to instead seek these records from ICE. ICE, in turn, has not produced these records either, because it does not possess the requested records, which are only held by the county. By applying the Records Rule to county records that it does not possess, ICE has completely shielded these records from disclosure, even though they ordinarily must be disclosed under federal and state FOIA.

7. Plaintiffs, American Civil Liberties Union of Michigan and American Civil Liberties Union Fund of Michigan (together "ACLU of Michigan"), bring this action under the Administrative Procedure Act ("APA") to vacate the Records Rule as applied to records that are not in ICE's possession. The Records Rule is contrary to law and arbitrary and capricious insofar as it prohibits state and local entities, such as county jails, from disclosing their own records that ICE does not possess regarding detained immigrants.

## JURISDICTION AND VENUE

8. This case is brought under the APA, 5 U.S.C. § 701 *et seq.* This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

9. Venue is proper under 28 U.S.C. § 1391(e) because Defendants are agencies of the United States, Defendants reside in this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District.

10. This Court is authorized to vacate the Rule, and to award the requested declaratory and injunctive relief, under the APA, 5 U.S.C. § 706; the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202; and the Court's equitable powers.

## PARTIES

11. **Plaintiffs** American Civil Liberties Union of Michigan, a non-profit, non-partisan 26 U.S.C. § 501(c)(4) organization, and American Civil Liberties Union Fund of Michigan, a non-profit, non-partisan 26 U.S.C. § 501(c)(3) organization (together "ACLU of Michigan"), are dedicated to protecting civil liberties and civil rights in Michigan. The ACLU of Michigan, which has thousands of members and supporters in Michigan, is a state affiliate of the national American Civil Liberties Union ("ACLU"). The ACLU of Michigan was officially established in 1959.

12. Among the rights and liberties that lie at the core of the ACLU and ACLU of Michigan's mission are the rights to be free from unlawful detention and to be treated fairly and equally by government authorities. One important way that the ACLU of Michigan discovers and investigates civil rights violations in detention is via the Michigan FOIA. That work is significantly frustrated by the Records Rule. Because the Records Rule prevents public access to county jail records involving detained immigrants, the ACLU of Michigan is impeded in its ability inform the

public about county jail conditions and immigration detention practices, and to provide effective legal support for and advocate on behalf of detained people.

13. **Defendant** U.S. Immigration and Customs Enforcement ("ICE") is a federal agency and component of the U.S. Department of Homeland Security. It is responsible for executing removal orders and overseeing immigration detention. It is one of the successor agencies to the Immigration and Naturalization Service ("INS"), which was dissolved in 2003 after the creation of the U.S. Department of Homeland Security.

14. **Defendant** Director of U.S. Immigration and Customs Enforcement is sued in their official capacity. As of this filing, there is no Senate-confirmed ICE Director.[2]

15. **Defendant** U.S. Department of Homeland Security ("DHS") is a cabinet-level department of the U.S. federal government. Its components include ICE.

16. **Defendant** Secretary of U.S. Department of Homeland Security is sued in their official capacity. As of this filing, there is no Senate-confirmed Secretary of DHS.[3]

## STATEMENT OF FACTS

**Federal and State Laws Promoting Public Access to Government Records**

17. The federal FOIA, 5 U.S.C. § 552, was enacted to facilitate public access to government documents. Its basic purpose is to ensure an informed citizenry and provide a necessary check against government corruption.

---

[2] Caleb Vitello has been announced as the acting Director of U.S. Immigration and Customs Enforcement. However, as of this filing, a Director of ICE has not been confirmed by the U.S. Senate. Plaintiffs will add this officer's name upon their confirmation or upon the Court's request. *See* Fed. R. Civ. P. 17(d).

[3] Benjamine Huffman has been announced as the acting Secretary of the U.S. Department of Homeland Security. However, as of this filing, a Secretary of DHS has not been confirmed by the U.S. Senate. Plaintiffs will add this officer's name upon their confirmation or upon the Court's request. *See* Fed. R. Civ. P. 17(d).

18. In a similar vein, Congress enacted the Privacy Act of 1974, 5 U.S.C. § 552a, to establish a system for collecting, maintaining, and disseminating records about individuals that are maintained by federal agencies.

19. Every state, including Michigan, also has its own FOIA or a similar public records access law.

**8 C.F.R. § 236.6 (the "Records Rule")**

20. 8 C.F.R. § 236.6 (the "Records Rule") states, in relevant part:

> No person, including any state or local government entity or any privately operated detention facility, that houses, maintains, provides services to, or otherwise holds any detainee on behalf of the Service (whether by contract or otherwise), and no other person who by virtue of any official or contractual relationship with such person obtains information relating to any detainee, shall disclose or otherwise permit to be made public the name of, or other information relating to, such detainee. Such information shall be under the control of the Service and shall be subject to public disclosure only pursuant to the provisions of applicable federal laws, regulations and executive orders. Insofar as any documents or other records contain such information, such documents shall not be public records. This section applies to all persons and information identified or described in it, regardless of when such persons obtained such information . . . .

21. On its face, the Records Rule bars any person or entity that houses or holds a detained immigrant from disclosing or publicizing that individual's name or "other information relating" to them. Such information, according to the Records Rule, can be disclosed only pursuant to an applicable federal law, such as FOIA and the Privacy Act. ICE uses the Records Rule to assert control over records created by a county jail, including those that are only in the county's—not ICE's—possession. As a result, ICE has not released county records about detained immigrants that are solely in the possession of a county jail under FOIA, while barring the county from releasing those records under state FOIA laws.

22. The Records Rule was issued in the wake of the September 11, 2001, terrorist attacks. In response to the imminent disclosure of information related to detained immigrants held

6

in two New Jersey county jails in September 2001, the Immigration and Naturalization Service (Defendant ICE's predecessor agency) issued the Records Rule as an interim rule, effective immediately, in an attempt to bar the disclosure of the requested records. *See ACLU of New Jersey, Inc. v. Cnty. of Hudson*, 352 N.J. Super. 44, 60-61; 799 A.2d 629 (App. Div. 2002). In response to the Records Rule's promulgation, the two county jails withheld records about 9/11-era detainees, despite the traditional availability of the requested records under New Jersey's Right-to-Know Law. *See id*.

23. After a brief comment period, the Records Rule became final on January 29, 2003. In the Federal Register entry for the Records Rule, the following statutes are cited as sources of authority for its promulgation: 8 U.S.C. § 1103(a); 8 U.S.C. § 1103(c); 8 U.S.C. § 1226; and 8 U.S.C. § 1231. *See* 68 F.R. 4364, 4365.

24. The Federal Register entry for the Records Rule incorporates by reference the analysis in the prior Federal Register entry for the interim rule. That prior entry focuses on 8 U.S.C. § 1103(a) as the primary source of statutory authority for the Records Rule.[4]

25. 8 U.S.C. § 1103(a)(1) charges the Secretary of Homeland Security with "the administration and enforcement" of all "laws relating to the immigration and nationalization" of noncitizens.[5]

---

[4] The other statutes cited in the Federal Register do not speak to the question of ICE records. 8 U.S.C. § 1103(c) gives the ICE Director the authority to enter into agreements with state and local agencies to assist in enforcing immigration laws, while 8 U.S.C. § 1226 and 8 U.S.C. § 1231 are the general authorizing statutes for ICE's detention authority.

[5] At the time that the Records Rule was promulgated, 8 U.S.C. § 1103(a)(1) conferred the cited authority to the Attorney General, not the Secretary of Homeland Security. *See* Consolidated Appropriations Resolution, Pub. L. No. 108–7, 117 Stat. 11 (2003) (striking "Attorney General" and inserting "Secretary of Homeland Security").

26. 8 U.S.C. § 1103(a)(2) states that the Secretary of Homeland Security "shall have control, direction, and supervision . . . of all the files and records of the [Immigration and Nationalization] Service" (now Defendant ICE).

27. 8 U.S.C. § 1103(a)(3) empowers the Secretary of Homeland Security to "establish such regulations . . . as he deems necessary for carrying out his authority."

**Immigration Detention in Michigan**

28. The ACLU of Michigan regularly sponsors legal representation of individuals in immigration detention and also provides assistance to immigration attorneys and advocates for individuals in immigration detention. In connection with this work, the ACLU of Michigan sometimes attempts to obtain records related to those individuals from county jails via the Michigan FOIA, Mich. Comp. Laws § 15.231 *et seq.*

29. Across the country, ICE contracts with dozens of county jails to detain immigrants for civil immigration enforcement purposes. In many—if not most—places, these county jails treat detained immigrants much like any other person detained on state criminal charges, subjecting them to the same intake, medical, dietary, and disciplinary regimes. The only meaningful difference is the reason they were sent to and are held at the facility.

30. In recent years, each day, over 24,000 detained immigrants are held in county jails under contracts with ICE. *See* ICE, *ERO Custody Management Division, Authorized Dedicated and Non-Dedicated Facility List* (Sept. 9, 2024), https://www.ice.gov/doclib/facilityInspections/dedicatedNonDedicatedFacilityList.xlsx.

31. In Michigan, all individuals detained for immigration enforcement purposes are held in one of four county jails that have bed-space contracts (called Intergovernmental Service Agreements, or "IGSAs") with Defendant ICE. The Michigan county jail that holds the largest

8

number of detained immigrants is the Calhoun County Correctional Facility ("Calhoun County").[6] The other three Michigan counties whose jails have IGSAs with Defendant ICE are Monroe County, St. Clair County, and Chippewa County.

32. Despite being detained on behalf of ICE under an IGSA, detained immigrants at Calhoun County are held alongside state criminal detainees. Calhoun County's practices and procedures governing the daily lives of detained immigrants are virtually indistinguishable from those detained on state criminal charges. Both are held in the same units, given the same uniforms, fed the same meals, offered the same medical care, supervised by the same jail officers and staff, and largely subject to the same disciplinary rules and penalties.

**Plaintiffs' Attempts to Obtain County Jail Records Related to Detained Immigrants**

33. To date, Calhoun County has cited the Records Rule to deny three of Plaintiffs' state FOIA requests for county-created records about detained immigrants. This is true even when the requested records are all county-created records that would be routinely produced for people detained on state criminal charges.

34. The ACLU of Michigan has twice attempted to seek those same records via a parallel federal FOIA request to ICE; both times, ICE produced virtually no county-created and -maintained detainee records, such as intake, medical, and disciplinary records.

35. The ACLU of Michigan has thus been unable to obtain these records through state *or* federal FOIA. The Records Rule has placed most records about county-held immigration detainees in an impenetrable black box, shielding them from public scrutiny.

---

[6] "Calhoun County" is used in this Complaint to encompass actions taken by or on behalf of the Calhoun County Correctional Facility, including those by Calhoun County (the facility's parent county) and the Calhoun County Sheriff's Office (which oversees the facility).

9

36. In addition to the specific FOIA requests described below, the ACLU of Michigan plans to continue seeking records from the four Michigan jails with IGSAs that would be disclosable under the Michigan FOIA but for the Records Rule. Vacating the Record Rule as applied to these records would remedy Plaintiffs' inability to obtain these records.

### *State FOIA Request Regarding Unlawful Detention of Jilmar Ramos-Gomez*

37. On January 17, 2019, the ACLU of Michigan sent a state FOIA request to Calhoun County seeking records related to the detention of Jilmar Ramos-Gomez, a U.S. citizen who was wrongfully detained by ICE at Calhoun County.[7] The ACLU of Michigan amended that FOIA request on January 23, 2019 (the "2019 Request").

38. The 2019 Request sought, *inter alia*, Mr. Ramos-Gomez's booking and intake forms, documentation of medical treatment, his jail disciplinary records, and any recordings of interactions between him and jail staff. All of these documents were created by and in the possession of Calhoun County, not ICE.

39. On January 28, 2019, Calhoun County denied the 2019 Request in its entirety, claiming that the federal Privacy Act, 5 U.S.C. § 552a, barred disclosure of the requested records. *See* Mich. Comp. Laws § 15.243(1)(d) (allowing the withholding of records "specifically described and exempted from disclosure by statute").

40. On July 26, 2019, the ACLU of Michigan filed a lawsuit under the state FOIA to challenge Calhoun County's improper denial of its January 23, 2019 FOIA request.

41. In its September 24, 2019 Answer to the ACLU of Michigan's state Complaint, Calhoun County revealed an additional alleged statutory basis for its denial under the state FOIA:

---

[7] This FOIA request was accompanied by a signed statement from Mr. Ramos-Gomez authorizing the release of his records to the ACLU of Michigan.

the Records Rule. Calhoun County claimed that the Records Rule "explicitly excludes the requested information from disclosure or from the definition of a 'public record.'"

42. As state litigation over the 2019 Request proceeded, the Records Rule became the primary basis for Calhoun County's continued refusal to produce the requested county jail records under state law. In its October 10, 2019 Motion for Summary Disposition, Calhoun County claimed that "[a]ll records and information related to ICE detention are covered by a specific federal regulation, 8 CFR 236.6," which renders those records "not public records subject to disclosure by [Calhoun County]" under Michigan's state FOIA statute.

43. On December 16, 2019, the state trial court granted Calhoun County's Motion for Summary Disposition. The ACLU of Michigan subsequently appealed, and the Michigan Court of Appeals affirmed the lower court's decision on March 25, 2021.

44. The ACLU of Michigan appealed to the Michigan Supreme Court. On February 4, 2022, the Michigan Supreme Court reversed the Court of Appeals' decision and unanimously held that the Records Rule was not a valid basis to deny the 2019 Request under Michigan law because the Records Rule was not a "statute" under the claimed Michigan state FOIA exemption, Mich. Comp. Laws § 15.243(1)(d).

45. On remand in the trial court, Calhoun County filed a second Motion for Summary Disposition on September 29, 2022—this time taking the position that the Records Rule preempted the Michigan state FOIA.

46. After Calhoun County's second Motion for Summary Disposition was fully briefed, Calhoun County suddenly produced the records requested in the 2019 Request, claiming that ICE had finally given them permission to disclose the records.

47. The parties then settled the case. The case was voluntarily dismissed on February 21, 2024, after one year of settlement negotiations.

48. As a part of those settlement negotiations, the ACLU of Michigan asked Calhoun County to create a written policy to govern how it would process state FOIA requests for records related to individuals in immigration detention at the facility. While Calhoun County expressed openness to developing a policy whereby it would identify responsive records and forward them to ICE for review, Calhoun County notified the ACLU of Michigan that ICE ultimately rejected the proposal, and that ICE's position was that instead of forwarding requested records to ICE, Calhoun County should simply use the Records Rule to deny Michigan FOIA requests. Thus, based on its conversations with ICE, Calhoun County concluded that the Records Rule "outright prohibits the county from releasing these records (records relating to detainees) to third-parties"— even if ICE does not have the records. E-mail from Marcelyn A. Stepanski, Rosati Schultz Joppich & Amtsbuechler, PC, to Ramis J. Wadood, Staff Attorney, ACLU of Michigan (Sept. 27, 2023, 12:07 PM EST), attached hereto as Exhibit A.

49. Calhoun County also informed the ACLU of Michigan that it did not intend to proactively forward detainee records to ICE to be made available via a federal FOIA request. Instead, Calhoun County would keep the records "[u]nless and when ICE contacts Calhoun County for those records." *Id.* It appears that ICE, however, has never adopted any procedure to instruct county jails to forward records about detained immigrants to ICE so that they can be produced through federal FOIA.

### *Federal FOIA Request Regarding Mr. Ramos-Gomez*

50. On March 9, 2019, the ACLU of Michigan also submitted a federal FOIA request to ICE largely seeking the same records as the 2019 Request to Calhoun County. ICE failed to

12

issue a timely determination, and the ACLU of Michigan filed suit in this Court on November 20, 2019. Complaint, *ACLU of Michigan v. U.S. Dep't of Homeland Sec. et al.*, No. 19-cv-03489 (D.D.C. Nov. 20, 2019).

51. The parties agreed to a rolling production of responsive records, and ICE produced records periodically until December 2022, after which the parties settled the matter and dismissed the case on February 22, 2024.

52. ICE's production did not include a large set of critical records created and maintained by Calhoun County—namely, Mr. Ramos-Gomez's complete custody, disciplinary, and health records, as well as audio/video recordings of interactions between Mr. Ramos-Gomez and Calhoun County personnel. *See* Aff. of Monica Andrade, *ACLU of Michigan v. Calhoun Cnty. Jail*, No. 2019-2106-CZ (Mich. Calhoun County Cir. Ct. Nov. 14, 2022), attached hereto as Exhibit B. ICE did not find and withhold these records pursuant to a FOIA exemption; rather, they did not appear in ICE's search because they were county-created and -maintained records that were not in ICE's possession.

### *State FOIA Request Regarding In-Jail Abuse of Luisa Fernanda Martinez Orozco*

53. In early 2024, the ACLU of Michigan received a complaint from Luisa Fernanda Martinez Orozco, an asylum seeker from Colombia who was transferred to Calhoun County from a detention center in Texas. Ms. Martinez Orozco alleged that she had been subjected to multiple instances of physical violence by Calhoun County personnel and a repeated lack of adequate language accommodations (her native language is Nasa Yuwe, a language spoken by certain indigenous people in Colombia).

54. In order to investigate that complaint further, the ACLU of Michigan sent a Michigan state FOIA request to Calhoun County on March 20, 2024, seeking records related to

Ms. Martinez Orozco's detention and her treatment by Calhoun County officials (the "2024 Request").

55. Of particular relevance here, the 2024 Request sought in-jail video recordings, booking forms, and medical records—all types of county-created records that would be routinely produced for someone detained on state criminal charges.

56. On April 3, 2024, Calhoun County denied the 2024 Request in its entirety, presumably because of its existing understanding of the Records Rule: "[t]he individual you are seeking information about was an ICE Detainee and thus your FOIA request will need to be submitted to ICE directly."

57. On July 2, 2024, the ACLU of Michigan sent Calhoun County a second Michigan state FOIA request that was nearly identical to the 2024 Request, except that it requested records from a later time period (the "2024 Second Request") relating to additional alleged incidents of violence against Ms. Martinez Orozco by Calhoun County staff.

58. After initially appearing to grant the 2024 Second Request on August 14, 2024, Calhoun County informed the ACLU of Michigan on September 17, 2024, that it had made a "mistake" and would be "unable to provide you with the requested information. You must make your request to ICE FOIA."

### *Federal FOIA Request Regarding Ms. Martinez Orozco*

59. On March 27, 2024, the ACLU of Michigan submitted a federal FOIA request to ICE seeking the same records sought in the 2024 Request and the Second 2024 Request to Calhoun, as well as records related to Ms. Martinez Orozco's detention at another facility in Texas.

60. The federal request sought specific categories of records regarding Ms. Martinez Orozco's detention at each facility, including but not limited to (1) facility-created records, such

14

as booking records, intake records, personal property records, disciplinary records, and medical records; (2) recordings of her interactions with jail staff; (3) communications between ICE and jail staff regarding Ms. Martinez Orozco; (4) incident reports related to the use of physical force against Ms. Martinez Orozco; and (5) records related to ICE's reviews of her custody and her transfer from STFRC to Calhoun County.

61. After nearly six months passed without a determination from ICE, the ACLU of Michigan filed a federal FOIA lawsuit to compel the timely production of the requested records. Complaint, *ACLU of Michigan v. U.S. Immigr. & Customs Enf't et al.*, No. 24-cv-12466 (E.D. Mich. Sept. 19, 2024).

62. As of the date of this filing, no documents have been produced through that lawsuit or otherwise in response to the underlying federal FOIA request.

**Other Attempts to Obtain County Jail Records Related to Detained Immigrants**

63. Plaintiffs are not the only ones whose public records requests have been obstructed by the Records Rule.

64. On February 8, 2021, Jesse Dean Jr., an immigrant from the Bahamas, died suddenly while detained by ICE at Calhoun County. The ACLU of Michigan learned of his death because Mr. Dean was a class member in its class action lawsuit regarding the health and safety of immigrants detained at Calhoun County. His family sought records through both state FOIA and federal FOIA, including all medical and mental health records, records pertaining to his detention, and investigation records of his untimely death.

65. After a lengthy delay in processing, on July 19, 2021, Calhoun County denied the state FOIA request. Among other reasons, Calhoun County argued that the records are exempt from disclosure because of the Records Rule. Calhoun County specifically cited the lower court's

15

decision in the ACLU of Michigan's challenge over Mr. Ramos-Gomez's records (at this point, the Michigan Supreme Court had not yet issued its opinion reversing the lower court decision). Calhoun County never produced any records about Mr. Dean.

66. Meanwhile, the family did not receive any records in response to their federal FOIA request until a year later, in February 2022. Even then, ICE did not produce critical records created and maintained by the county that were not in ICE's possession—including critical records of Mr. Dean's interactions with staff at Calhoun County as his health deteriorated over the five weeks he was in ICE detention.

67. In addition to the Dean family's FOIA requests, public records requests to county jails in other states have been denied or resisted on the basis of the Records Rule. The ACLU of Michigan's sister affiliates in Florida, Massachusetts, Minnesota, Pennsylvania, and Rhode Island have also faced similar problems when they submitted public records requests to counties that contract with ICE. *See, e.g., Lin Li Qu v. Cent. Falls Det. Facility Corp.*, No. 08-7106 (R.I. Super. Ct. Nov. 21, 2008) (a Rhode Island county jail seeking protective order on the basis of the Records Rule).

**Ongoing Harm to Plaintiffs Because of the Records Rule**

68. The Records Rule continues to obstruct public access to crucial records related to the detention and treatment of detained immigrants in county jails.

69. The Records Rule poses an impermissible impediment on Plaintiffs' ability to obtain information about detained immigrants. The ACLU of Michigan plans to continue seeking records from Michigan jails that detain immigrants for ICE that would be disclosable under the Michigan FOIA but for the Records Rule.

70. Calhoun County has informed Plaintiffs that it will continue to deny state FOIA requests and withhold records related to detained immigrants based on the Records Rule.

71. Michigan has three other county jails with IGSAs that will similarly be subject to the Records Rule when responding to state FOIA requests by Plaintiffs and others for county-created records that ICE does not possess. And if a detained immigrant is transferred from a Michigan county jail to a county jail in another state, the Records Rule will likely prevent Plaintiffs from obtaining records from that out-of-state jail via the applicable state FOIA.

## CLAIMS FOR RELIEF

### COUNT I
### Violation of Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*
### (8 C.F.R. § 236.6 Exceeds Statutory Authority)

72. Plaintiffs repeat and re-allege the allegations contained in the above paragraphs.

73. The APA provides that a court "shall hold unlawful and set aside agency action, findings, and conclusions found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

74. In the Federal Register entries for the Records Rule, Defendants primarily rely on 8 U.S.C. § 1103(a) as the statutory authority for the Records Rule.

75. 8 U.S.C. § 1103(a)(2) confers upon Defendants the authority to "control, direct[], and supervis[e] . . . all files and records *of the Service*" (i.e., of ICE). But it does not allow ICE to control and keep secret records that ICE does not possess.

76. No other part of 8 U.S.C. § 1103, or any other authorizing statute, confers upon Defendants the authority to prohibit state and local entities from disclosing their own records that ICE does not possess under valid state public records laws.

17

77. Accordingly, the Records Rule as applied to local records that ICE does not possess is in excess of Defendants' statutory authority, as set forth in 8 U.S.C. § 1103. *See* 5 U.S.C. § 706(2)(C).

## COUNT II
### Violation of Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*
### (8 C.F.R. § 236.6 Is Arbitrary and Capricious)

78. Plaintiffs repeat and re-allege the allegations contained in the above paragraphs.

79. The APA provides that courts "shall . . . hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

80. The Records Rule was promulgated on an emergency basis in response to an unprecedented national crisis: the September 11, 2001, terrorist attacks. The Records Rule's purpose was to prevent sensitive national security information from being produced to the public. Yet in reality, the Records Rule extends far beyond that purpose, instructing county jails to deny *all* public records requests related to *any* detained immigrant, regardless of national security implications.

81. In promulgating the Rule, Defendants failed to adequately explain why the Records Rule reached beyond Defendants' own records and into locally-created records that are not in Defendants' possession. The Federal Register entries for the Records Rule do not address this issue at all, much less explain why the agency would render these records about detained immigrants entirely secret.

82. In promulgating the Records Rule, Defendants relied on factors which Congress did not intend them to consider, entirely failed to consider important aspects of the problem, and offered an explanation for its decision that runs counter to the evidence.

83. The challenged applications of the Records Rule also run counter to federal FOIA and the Privacy Act, 5 U.S.C. § 552a, which express Congress's desire to make records of federal agency activity—including detention—available to detained people and the public. Congress specified that records can be exempted from disclosure under FOIA only by explicit statutory language, thus ensuring that agencies could not use the regulatory process to shield records from disclosure. 5 U.S.C. § 552(b)(3). It is arbitrary for ICE to nullify those statutes' pro-disclosure policies as to detained immigrants in county jails, and especially to do so without any explanation.

84. Accordingly, the Records Rule is arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs ask the Court to:

85. Enter judgment for Plaintiffs and against Defendants;

86. Vacate and set aside the Records Rule insofar as it prohibits state and local entities, such as county jails, from disclosing local records that ICE does not possess;

87. Declare that the Records Rule as applied to local records not in ICE's possession exceeds Defendants' statutory authority and is arbitrary and capricious;

88. In the alternative, declare that the Records Rule does not apply to local records not in ICE's possession;

89. Enjoin and restrain Defendants, their agents, servants, employees, attorneys, and persons in active concert or participation with any of the Defendants from (1) implementing or enforcing the Records Rule insofar as it prohibits or inhibits state and local entities, such as county jails, from disclosing local records not in ICE's possession; and (2) taking any other action to

prohibit or inhibit state and local entities, such as county jails, from disclosing records ICE does not have;

90.     Award Plaintiffs attorney fees and other litigation costs pursuant to the Equal Access to Justice Act and/or any other applicable law; and

91.     Grant such other relief the Court may deem just and proper.

Dated: January 22, 2025

| | |
|---|---|
| Ramis J. Wadood* <br> Daniel S. Korobkin* <br> Philip E. Mayor* <br> American Civil Liberties Union Fund of Michigan <br> 2966 Woodward Avenue <br> Detroit, MI 48201 <br> (313) 578-6800 <br> rwadood@aclumich.org | /s/ Eunice H. Cho <br> Eunice H. Cho (D.C. Bar #1708073) <br> American Civil Liberties Union Foundation <br> National Prison Project <br> 915 Fifteenth Street NW, 7th Floor <br> Washington, DC 20005 <br> Phone: (202) 548-6616 <br> echo@aclu.org |
| Spencer Amdur* <br> My Khanh Ngo* <br> American Civil Liberties Union Foundation <br> Immigrants' Rights Project <br> 425 California Street, 7th Floor <br> San Francisco, CA 94104 <br> Phone: (415) 343-0770 <br> samdur@aclu.org <br> mngo@aclu.org | Kyle Virgien* <br> American Civil Liberties Union Foundation <br> National Prison Project <br> 425 California Street, 7th Floor <br> San Francisco, CA 94104 <br> Phone: (415) 343-0770 <br> kvirgien@aclu.org <br><br> Attorneys for Plaintiffs <br><br> * *Pro hac vice* motions forthcoming |