UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF MICHIGAN, et al.,<br><br>      Plaintiffs,<br><br>  v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>      Defendants. | Civil Action No. 25-0184 (AHA) |

**MOTION TO DISMISS AND MEMORANDUM IN SUPPORT THEREOF**

## **TABLE OF CONTENTS**

**BACKGROUND** ................................................................................................................................ 1

**LEGAL STANDARDS** ..................................................................................................................... 4

    I.     Lack of Subject Matter Jurisdiction Under 12(b)(1) ................................................................ 4

    II.    Failure to State a Claim Under 12(b)(6) .................................................................................. 5

**ARGUMENT** ..................................................................................................................................... 5

    I.     Plaintiffs Failed to State a Claim Under the APA Because They Have Another Adequate Remedy ................................................................................................................... 5

    II.    Plaintiffs Have Otherwise Not Identified a Case or Controversy ........................................... 7

**CONCLUSION** .................................................................................................................................. 9

Defendants, through undersigned counsel, respectfully move to dismiss Plaintiffs' Complaint under Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6). Plaintiffs have not stated a claim under the Administrative Procedure Act ("APA") because there is another adequate remedy for the wrong they complain of: the Freedom of Information Act ("FOIA"). Otherwise, Plaintiffs have not established an ongoing case or controversy.

## BACKGROUND

After September 11, 2001, with national security concerns heightened, the Department of Justice determined that it was necessary for information regarding noncitizens detained in the United States to be handled with great care. Final Rule, *Release of Information Regarding Immigration and Naturalization Service Detainees in Non-Federal Facilities*, 68 Fed. Reg. 4364, 4366, 2003 WL 179622 (Jan. 29, 2003). Among other things, the Department determined that the inappropriate release of information concerning detained noncitizens could provide those who were averse to the United States with intelligence that was harmful to national security and law enforcement interests. *Id.* Deeming the circumstances an emergency, the Department used the good cause exception to rulemaking to first publish an interim rule with a request for comments, followed by a final rule. *Id.* at 4365 (refuting concerns that the interim rule was improperly promulgated under the APA because of the good cause exception under 5 U.S.C. § 553(b)(B) and (d)(3)). The interim rule read as follows, and has not changed since its inception:

> No person, including any state or local government entity or any privately operated detention facility, that houses, maintains, provides services to, or otherwise holds any detainee on behalf of the Service[1] (whether by contract or otherwise), and no other person who by virtue of any official or contractual relationship with such person obtains information relating to any detainee, shall disclose or otherwise

---

[1]   While the rule refers to the Immigration and Naturalization Service, the functions of the Service and all authorities with respect to those functions transferred to the Department of Homeland Security on March 1, 2003, and the Service was abolished on that date pursuant to the Homeland Security Act of 2002 and the Department of Homeland Security Reorganization Plan.

> permit to be made public the name of, or other information relating to, such detainee. Such information shall be under the control of the Service and shall be subject to public disclosure only pursuant to the provisions of applicable federal laws, regulations and executive orders. Insofar as any documents or other records contain such information, such documents shall not be public records. This section applies to all persons and information identified or described in it, regardless of when such persons obtained such information, and applies to all requests for public disclosure of such information, including requests that are the subject of proceedings pending as of April 17, 2002.

8 C.F.R. § 236.6; *see also* Interim Rule, *Release of Information Regarding Immigration and Naturalization Service Detainees in Non-Federal Facilities*, 67 Fed. Reg. 19508, 19511, 2002 WL 602768 (Apr. 22, 2002).

Under federal law, the Attorney General was – and now the Secretary of Homeland Security is – explicitly charged with the administration and enforcement of the Nation's immigration laws. 8 U.S.C. § 1103(a)(1) ("The Secretary of Homeland Security shall be charged with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens[.]"). Pursuant to those responsibilities, the Secretary possesses broad and express authority to promulgate appropriate immigration regulations. *See id.* § 1103(a)(3) (the Secretary "shall establish such regulations; . . . issue such instructions; and perform such other acts as he deems necessary for carrying out his authority under the provisions of this chapter."). The Secretary has explicit statutory authority to enter into agreements with State and local governments for the housing of noncitizens detained under provisions of the immigration laws. *Id.* § 1103(a)(11). The Secretary "shall have control, direction, and supervision of . . . all the files and records of the Service." *Id.* § 1103(a)(2).

Notably, in considering whether 8 C.F.R. § 236.6 would infringe on First Amendment rights, the Department concluded during the rulemaking process that FOIA would provide the proper balance between the desire to have records and countervailing interests in national security, safety, and privacy:

2

> Fourth, the rule does not infringe upon any public First Amendment rights. Rather, the rule ensures that any disclosure of information pertaining to federal detainees will be governed by the federal Freedom of Information Act (FOIA), 5 U.S.C. § 552. The FOIA provides generally for disclosure of records by federal agencies, but contains exceptions that Congress believed crucial to the effective functioning of the national government. *See, e.g.*, 5 U.S.C. § 552(b)(1), (7)(A), (C), (E), (F). The rule here ensures that federal interests will be protected by channeling information requests through the FOIA. In addition, the rule guarantees that information regarding federal detainees will be released under a uniform federal scheme rather than the varying laws of fifty states. . . . By channeling requests for information through the FOIA, which contains a privacy exception, the rule also protects detainees' privacy. Just as the government has a substantial interest in protecting legitimate national security, intelligence and law enforcement functions under the FOIA, detainees may have a substantial privacy interest in their names and the personal information connected with their status as detainees. 5 U.S.C. § 552(b)(1), (6), (7)(A), (C), (E). For example, individuals who were originally detained because of their possible connection to terrorism, have an overwhelming interest in not being connected with such activity. And particularly with respect to those individuals cooperating with the government's law enforcement investigations, there are powerful reasons why such persons would wish to conceal their identities and whereabouts. Indeed, other INS regulations expressly shield from disclosure information pertaining to or contained in an asylum application. *See* 8 C.F.R. § 208.6(a). Contrary to some of the commenters' suggestions, the fact that certain detainees may wish to publicly identify themselves, which they are free to do, in no way undermines this assessment.

Final Rule, *Release of Information Regarding Immigration and Naturalization Service Detainees in Non-Federal Facilities*, 68 Fed. Reg. 4364, 4366, 2003 WL 179622 (Jan. 29, 2003).

Here, Plaintiffs allege that they submitted two requests for records under FOIA and three requests under the Michigan state equivalent but because of 8 C.F.R. § 236.6, they have not been able to obtain "critical" records from their requests. *See* Compl. ¶ 33 (three state FOIA requests), *id.* ¶ 34 (two federal FOIA requests), *id.* ¶ 52 ("ICE's production did not include a large set of critical records created and maintained by Calhoun County[.]"). For the requests related to Jilmar Ramos-Gomez, Plaintiffs settled the cases. *Id.* ¶ 47, 51. For the requests related to Luisa Fernanda Martinez Orozco, Plaintiffs have filed suit in the Eastern District of Michigan to compel the production of documents related to the federal request. *Id.* ¶ 61 (explaining that Plaintiffs filed suit in the Eastern District of Michigan under case caption *ACLU of Michigan v. ICE*, Civ. A. No. 24-

3

12466). It appears the parties there recently stipulated to an order for the monthly production of documents beginning on May 15, 2025. *See* Order, *ACLU of Michigan v. ICE*, Civ. A. No. 24-12466 (Apr. 25, 2025), ECF No. 22.

Plaintiffs allege that others – who are not parties to this case – have filed FOIA requests but because of 8 C.F.R. § 236.6, the others have similarly not been able to obtain the "critical" records sought. Compl. ¶ 63 (alleging the family of Jesse Dean Jr. submitted requests and that for the federal request "the family did not receive any records in response to their federal FOIA request until a year later" and "[e]ven then, ICE did not produce critical records[.]"); *id.* ¶ 67 ("The ACLU of Michigan's sister affiliates in Florida, Massachusetts, Minnesota, Pennsylvania, and Rhode Island have also faced similar problems when they submitted public records requests to counties that contract with ICE.").

On January 22, 2025, Plaintiffs filed suit under the APA, claiming that 8 C.F.R. § 236.6 is in excess of statutory jurisdiction, authority, or limitations under 5 U.S.C. § 706(2)(C), and that it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under 5 U.S.C. § 706(2)(A). Compl. ¶¶ 72-84.

## LEGAL STANDARDS

**I.     Lack of Subject Matter Jurisdiction Under 12(b)(1)**

Under Rule 12(b)(1), a plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). A court considering a Rule 12(b)(1) motion must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). A court may

examine materials outside the pleadings as it deems appropriate to resolve the question of its jurisdiction. *See Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

## II.  Failure to State a Claim Under 12(b)(6)

Under Rule 12(b)(6), the Court may dismiss a Complaint where a plaintiff fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When resolving a motion to dismiss pursuant to Rule 12(b)(6), the pleadings are construed broadly so that all facts pleaded therein are accepted as true, and all inferences are viewed in a light most favorable to the plaintiff. *See Iqbal*, 556 U.S. at 678. However, a court is not required to accept conclusory allegations or unwarranted factual deductions as true. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Likewise, a court need not "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Ultimately, the focus is on the language in the complaint and whether that sets forth sufficient factual allegations to support a plaintiff's claims for relief.

## ARGUMENT

### I.  Plaintiffs Failed to State a Claim Under the APA Because They Have Another Adequate Remedy

Under the APA, a court "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be," among other things, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C). The Act does not apply when "statutes preclude judicial review" or when "agency action is committed to agency discretion by

law." *Id.* § 701(a). Judicial review is limited, further, to "[a]gency action made reviewable by statute" or "final agency action for which there is no other adequate remedy in a court[.]" *Id.* § 704.

Notably, the D.C. Circuit has already held that FOIA provides an adequate remedy such that review under the APA is barred:

> By these lights, we have little doubt that FOIA offers an "adequate remedy" within the meaning of section 704, as it exhibits all of the indicators we have found to signify Congressional intent. FOIA contains an express private right of action and provides that review in such cases shall be "*de novo*." 5 U.S.C. § 552(a)(4)(B). As opposed to the "uncertain" and "doubtful" remedies we have rejected as insufficient to preclude APA review, our precedent establishes that a plaintiff . . . may bring a FOIA claim to enforce the reading-room provision. Indeed, in FOIA Congress established "a carefully balanced scheme of public rights and agency obligations designed to foster greater access to agency records than existed prior to its enactment." The creation of both agency obligations and a mechanism for judicial enforcement in the same legislation suggests that FOIA itself strikes the balance between statutory duties and judicial enforcement that Congress desired. Considered together, FOIA offers [the plaintiff] precisely the kind of "special and adequate review procedure[ ]" that Congress immunized from "duplic[ative]" APA review.

*Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Just.*, 846 F.3d 1235, 1245-46 (D.C. Cir. 2017) (citations omitted); *see also id.* at 1246 ("FOIA offers an 'adequate remedy' within the meaning of section 704 such that [the plaintiff's] APA claim is barred.").

As explained above, when 8 C.F.R. § 236.6 was promulgated, the Department of Justice expressly considered and found that FOIA provided an adequate remedy balancing a requesters desire to obtain records with the countervailing interests in national security, safety, and privacy. *See* Final Rule, *Release of Information Regarding Immigration and Naturalization Service Detainees in Non-Federal Facilities*, 68 Fed. Reg. 4364, 4366, 2003 WL 179622 (Jan. 29, 2003) (discussing how rule did not infringe on First Amendment rights because of FOIA).

Further, Plaintiffs' own submissions show that FOIA provides an adequate remedy, such that there can be no claim under the APA. For example, Plaintiffs complained about a FOIA request they submitted relating to Luisa Fernanda Martinez Orozco. Compl. ¶¶ 59-62. They alleged

6

that after nearly six months without a determination, they filed suit. *Id.* ¶ 61. But as is evident from the docket in that case, the parties have recently stipulated to an order to produce documents. *See* Order, *ACLU of Michigan v. ICE*, Civ. A. No. 24-12466 (Apr. 25, 2025), ECF No. 22. If Plaintiffs are not satisfied with the searches and withholdings there, they can contest them at summary judgment in that case. But regardless of the merits, Plaintiffs have an adequate remedy; they can sue to compel the production of documents under FOIA. *CREW*, 846 F.3d at 1246 ("[O]ur determination that FOIA is the proper vehicle for [the plaintiff's] claim is entirely distinct from the question whether [the plaintiff] is entitled to relief. That merits question . . . awaits a different day and a different case.").

Because the Freedom of Information Act provides an adequate remedy, Plaintiffs have not stated a claim under the APA.

## II.     Plaintiffs Have Otherwise Not Identified a Case or Controversy

"To invoke federal jurisdiction, a party must allege an actual case or controversy to overcome the threshold requirement imposed by Article III of the Constitution." *Prisology v. Fed. Bureau of Prisons*, 74 F. Supp. 3d 88, 93 (D.D.C. 2014), *aff'd* 852 F.3d 1114 (D.C. Cir. 2017). "To state a case or controversy under Article III, a plaintiff must establish standing." *Id.* (citation omitted). The "irreducible constitutional minimum of standing contains three elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). First, the plaintiff must have suffered an injury in fact, which is an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. *Id.* Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. *Id.* Third, it must be likely, as opposed to merely speculative, that the injury

will be redressed by a favorable decision. *Id.* at 561. Lastly, the party invoking federal jurisdiction bears the burden of establishing these elements. *Id.*

Here, while Plaintiff alludes to two federal FOIA requests in their complaint, Compl. ¶ 34, neither is before this Court.[2] As explained above, for the request related to Jilmar Ramos-Gomez, Plaintiffs plead that they settled the case. *Id.* ¶ 51. For the request related to Luisa Fernanda Martinez Orozco, again, Plaintiffs have already filed suit in the Eastern District of Michigan. *Id.* ¶ 61; *see also* Order, *ACLU of Michigan v. ICE*, Civ. A. No. 24-12466 (Apr. 25, 2025), ECF No. 22. Plaintiffs allude to others who have filed FOIA requests and complain that they have had issues because of 8 C.F.R. § 236.6, but the others are not parties to this case. Compl. ¶¶ 63, 67. As is, there is no ongoing case or controversy for the Court to preside over.

Effectively, Plaintiffs ask this Court to vacate 8 C.F.R. § 236.6 because they argue it has been arbitrarily used in the past, and they speculate that it will be arbitrarily used in the future. Compl. ¶¶ 68-71. But given how there is currently no FOIA request before the Court where 8 C.F.R. § 236.6 is at issue, an opinion rendered by this Court would amount to nothing but an advisory opinion about the legality and validity of 8 C.F.R. § 236.6 based on some hypothetical or speculative future FOIA request that, currently, is unknown. A "federal court has neither the power to render advisory opinions nor 'to decide questions that cannot affect the rights of litigants in the case before them.'" *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). "Its judgments must resolve 'a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Id.*

---

[2] Plaintiffs reference state FOIA requests as well under the Michigan equivalent, but this Court would not have jurisdiction over Michigan state FOIA cases, and the proper defendant in those cases would be the county detention facility from which records were sought.

Because Plaintiffs have not identified an ongoing case or controversy, they have not established jurisdiction over their purported claims.

## CONCLUSION

The Court should dismiss this case for the reasons above.

Date:   May 9, 2025
       Washington, DC

Respectfully submitted,

EDWARD R. MARTIN, JR., D.C. Bar #481866
United States Attorney

By:   */s/ Sam Escher*
SAM ESCHER, D.C. Bar #1655538
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2531
Sam.Escher@usdoj.gov

*Attorneys for the United States of America*

9