**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF MICHIGAN, *et al.*; | |
| Plaintiffs, | |
| v. | Case No. 1:25-cv-00184-AHA<br>Hon. Amir H. Ali |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*; | |
| Defendants. | |

**PLAINTIFFS' RESPONSE
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

LEGAL STANDARD ......................................................................................................... 5

ARGUMENT ...................................................................................................................... 6

    I.   FOIA Does Not Provide an Adequate Remedy for Challenging the Legal Validity
        of the Records Rule. ................................................................................................ 6

    II.   Plaintiffs Have Established This Court's Jurisdiction Over Their APA Claims. ............. 14

CONCLUSION .................................................................................................................. 18

# INDEX OF AUTHORITIES

## Cases

*Air Excursions LLC v. Yellen*, 66 F.4th 272 (D.C. Cir. 2023) ................................................... 5, 15

*Am. Nat'l Ins. Co. v. F.D.I.C.*, 642 F.3d 1137 (D.C. Cir. 2011) ................................................ 5

*Ams. for Fair Treatment v. United States Postal Serv.*, 663 F. Supp. 3d 39 (D.D.C. 2023) .. 15, 18

*Aracely v. Nielsen*, 319 F. Supp. 3d 110 (D.D.C. 2018) ............................................................ 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................................... 5

*Banner Health v. Price*, 867 F.3d 1323 (D.C. Cir. 2017) ................................................... 14, 18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................ 5

*Bowen v. Massachusetts*, 487 U.S. 879 (1988) ............................................................................ 7

*Citizens for Resp. & Ethics in Washington v. Dep't of Just.*, 846 F.3d 1235 (D.C. Cir.
2017) ................................................................................................................................ 7, 8, 11

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) .................................................................. 14

*Cohen v. United States*, 650 F.3d 717 (D.C. Cir. 2011) ............................................................ 12

*Columbia Gulf Transmission, LLC v. FERC*, 106 F.4th 1220 (D.C. Cir. 2024) ........................ 17

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799 (2024) ............................ 6

*El Rio Santa Cruz Neighborhood Health Ctr. v. Dep't of Health and Hum. Servs.*, 396
F.3d 1265 (D.C. Cir. 2005) .................................................................................................... 7

*Elec. Priv. Info. Ctr. v. Internal Revenue Serv.*, 910 F.3d 1232 (D.C. Cir. 2018) ........................ 9

*Friends of the Earth v. Laidlaw Env't Servs.*, 528 U.S. 167 (2000) ........................................... 14

*Galvin v. Del Toro*, 586 F. Supp. 3d 1 (D.D.C. 2022) ................................................................ 9

*Gonzalez Boisson v. Pompeo*, 459 F. Supp. 3d 7 (D.D.C. 2020) ................................................. 12

*Greenpeace, Inc. v. Dep't of Homeland Sec.*, 311 F. Supp. 3d 110 (D.D.C. 2018) ...................... 9

*Narragansett Indian Tribal Hist. Pres. Off. v. FERC*, 949 F.3d 8 (D.C. Cir. 2020) .................. 14

*Perry Cap. LLC v. Mnuchin*, 864 F.3d 591 (D.C. Cir. 2017) ....................................................... 7

*Poss v. Kern*, No. 23-CV-2199, 2024 WL 4286088 (D.D.C. Sept. 25, 2024) .............................. 9

*Powell v. Yellen*, No. 22-5200, 2023 WL 8947132 (D.C. Cir. Dec. 28, 2023) ............................. 9

*R.I.L-R. v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015) ........................................................... 12

*Richardson v. Trump*, 496 F. Supp. 3d 165 (D.D.C. 2020) ....................................................... 17

*Scenic America, Inc. v. U.S. Dep't of Transp.*, 983 F. Supp. 2d 170 (D.D.C. 2013) ................... 12

*Sissel v. U.S. Dep't of Health & Hum. Servs.*, 760 F.3d 1 (D.C. Cir. 2014) ................................ 5

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ....................................................................... 14

*Women's Equity Action League v. Cavazos*, 906 F.2d 742 (D.C. Cir. 1990) ................................ 7

**Statutes**

5 U.S.C. § 552.................................................................................................................... 7, 8, 10, 11

5 U.S.C. § 704 ............................................................................................................................... 6

5 U.S.C. § 706 ............................................................................................................................... 6

28 U.S.C. § 2201 .......................................................................................................................... 10

28 U.S.C. § 2202 .......................................................................................................................... 10

**Regulations**

8 C.F.R. § 236.6 ......................................................................................................................... 2, 11

**Other Authorities**

Mich. Dep't of Corr., *Requesting Medical Records* (updated Oct. 1, 2024) ................................ 11

iv

**INTRODUCTION**

This lawsuit challenges Defendants' application of a federal regulation, 8 C.F.R. § 236.6 ("the Records Rule"), to prohibit local jails that detain immigrants on their behalf from disclosing any records about those detainees under state public records laws. Specifically, Plaintiffs challenge the Records Rule as applied to local records that Defendants do not possess, and that therefore cannot be obtained via the federal Freedom of Information Act (FOIA). The Records Rule's application to these local records renders most information about immigration detention completely secret.

Defendants' motion to dismiss does not defend the Records Rule on the merits. It does not contend with Plaintiffs' allegations that the Records Rule violates the Administrative Procedure Act (APA) because it exceeds Defendants' statutory authority and because it is arbitrary and capricious. The motion does not contest Plaintiffs' allegations that the Rule, as applied to local records that Defendants do not possess, prevents Plaintiffs and the public from accessing a vast array of immigration detention records that should be available under both state and federal law. And it does not contest Plaintiffs' allegations that they will continue to make requests for those records in the future.

Instead, Defendants offer two inapposite arguments for dismissal: first, that Plaintiffs' claims should be dismissed because they have an adequate remedy in the federal FOIA, and second, that Plaintiffs' ongoing harm is too speculative to establish standing. Neither argument is persuasive.

First, the federal FOIA provides no adequate remedy because it does not provide the specific remedy that Plaintiffs seek: vacatur of a federal rule. Because Plaintiffs' dispute is with the Records Rule itself and not with any specific federal FOIA request, their complaint does not

ask this Court to order the disclosure of any particular agency records—it asks this Court to vacate the Rule. The federal FOIA is also not an adequate remedy because ICE does not possess the relevant records and has therefore failed to produce them in response to previous FOIA requests. Second, Plaintiffs have filed a detailed complaint that more than plausibly alleges that the Records Rule has injured, and continues to injure, them in their pursuit of local records related to detained immigrants. Plaintiffs have a regular practice of seeking these records, which the Rule has repeatedly thwarted. Plaintiffs' repeated and recent injuries, along with their plans to file additional public records requests, make the risk of ongoing harm substantially likely. This Court should accordingly deny Defendants' motion to dismiss.

## BACKGROUND

Plaintiffs, the American Civil Liberties Union of Michigan and the American Civil Liberties Union Fund of Michigan, brought this APA action to challenge Defendants' unlawful application of the Records Rule. *See* Compl., ECF No. 1.

The Records Rule prohibits detention contractors, such as county jails, from "disclos[ing] or otherwise permit[ing] to be made public the name of, or other information relating to" immigrants they detain on behalf of Defendant ICE. 8 C.F.R. § 236.6. That information, according to the Rule, instead "shall be under the control of [ICE] and shall be subject to public disclosure only pursuant to the provisions of applicable federal laws, regulations and executive orders." *Id.* County jails that contract with ICE routinely create records related to detained immigrants, such as intake, medical, disciplinary, and grievance records, as well as communications with jail staff— just as they would for anyone else they detain on state criminal charges and convictions. *See* Compl. at ¶¶ 4, 29.

Michigan's FOIA makes most county jail records readily available to the public. *Id.* at ¶¶ 2-3. But ICE has applied the Records Rule to instruct county jails to withhold these records in response to valid state FOIA requests and instead to direct these FOIA requesters to file a federal FOIA request for the same records. *Id.* at ¶¶ 4-6. This is so even when ICE does not actually possess those records and thus does not make them available via a federal FOIA request. *Id.* at ¶¶ 33-35. ICE's enforcement of the Records Rule in this way thus renders most information about immigrants detained in contracted country jails completely hidden from public scrutiny. *Id.*

Plaintiffs have been injured by the Records Rule multiple times in the last few years. As a part of their organizational mission to provide legal assistance to immigrants and promote government transparency, Plaintiffs have submitted multiple state FOIA requests to county jails seeking records related to particular individuals detained on behalf of Defendant ICE. And each time, those county jails have denied Plaintiffs' FOIA requests based on the Records Rule. For example, in 2019, Plaintiffs sent a state FOIA request to Calhoun County—whose jail detains immigrants on behalf of ICE—seeking records related to Jilmar Ramos-Gomez, a U.S. citizen unlawfully detained there by ICE. *Id.* at ¶¶ 37-39. Calhoun County denied that request, and after Plaintiffs filed a state lawsuit challenging the denial, Defendants made clear that the primary basis for their denial was the Records Rule. *Id.* at ¶¶ 40-42. After a years-long legal saga that culminated in a unanimous Michigan Supreme Court decision in Plaintiffs' favor, Defendant ICE finally permitted the county to release the records Plaintiffs sought. *Id.* at ¶¶ 40-47. But soon after that release came the revelation that it was a one-time exception: Calhoun County informed Plaintiffs that, for any future FOIA requests, ICE was instructing them to continue denying the requests based on the Records Rule. *Id.* at ¶¶ 48-49. Calhoun County also stated that ICE had expressly rejected a proposal that, whenever a state FOIA request is made for immigration detention records,

those records could be provided to ICE so that ICE could produce them through the federal FOIA. *Id.*

Months later, when Plaintiffs submitted two state FOIA requests seeking records related to Luisa Martinez Orozco, an immigrant detained at Calhoun County's jail, Calhoun County followed ICE's instructions: they denied both requests on the basis of Records Rule and told Plaintiffs to make their request with ICE instead. *Id.* at ¶¶ 53-58.

Plaintiffs submitted parallel federal FOIA requests with ICE for both Mr. Ramos-Gomez and Ms. Martinez Orozco. *Id.* at ¶¶ 50, 59. Neither request resulted in the production of records, forcing Plaintiffs to file suit. *Id.* at ¶¶ 50, 61. In the lawsuit over Mr. Ramos-Gomez's records, ICE ultimately produced some records that it had in its possession but did *not* produce a large set of county-created records regarding Mr. Ramos-Gomez's time at the Calhoun County jail, such as custody, disciplinary, and health records, as well as audio and video recordings of interactions between Mr. Ramos-Gomez and Calhoun County personnel. *Id.* at ¶ 52. ICE did not produce these county-created records because ICE did not possess those records—only the county did. *Id.* The lawsuit over Ms. Martinez Orozco's records is ongoing; a rolling production has recently commenced, but based on prior practice, there is no reason to believe that ICE will produce all county-created records that it does not possess.

Plaintiffs regularly seek, and will continue to seek, records from Michigan jails detaining immigrants for ICE—records that would otherwise be disclosable under the Michigan FOIA but for the Records Rule. *Id.* at ¶¶ 68-69. Plaintiffs filed this lawsuit challenging Defendants' application of the Records Rule under the APA because Calhoun County has informed them that it will continue denying state FOIA requests for records related to detained immigrants due to the Records Rule. *Id.* at ¶¶ 48-49. The other county jails in Michigan that contract with ICE are

likewise covered by the Records Rule. *See id.* at ¶ 71. No statute authorized Defendants to promulgate a rule prohibiting state and local government agencies from disclosing *their own* records under public records laws, especially when those records are not in Defendants' possession and are thus unavailable through federal FOIA. Nor do Defendants have any reasoned basis or adequate explanation for applying the Records Rule to those local records. Accordingly, Plaintiffs' complaint alleges that the Records Rule as applied to such records violates the APA's prohibitions on arbitrary, capricious, and unlawful agency actions, and should be vacated. *See id.* at ¶¶ 72-84.

## LEGAL STANDARD

When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(1) or 12(b)(6), a court must accept as true all facts in the complaint, draw all reasonable inferences in the light most favorable to the plaintiffs, and determine legal and jurisdictional questions upon those facts and inferences. *Sissel v. U.S. Dep't of Health & Hum. Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014); *Am. Nat'l Ins. Co. v. F.D.I.C.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).

To survive dismissal under Fed. R. Civ. P. 12(b)(6), a complaint must simply contain enough factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To survive dismissal for lack of standing under Fed. R. Civ. P. 12(b)(1), plaintiffs need only to show that their complaint "contain[s] sufficient factual matter, accepted as true, to support an inference of standing that is plausible on its face." *Air Excursions LLC v. Yellen*, 66 F.4th 272, 277 (D.C. Cir. 2023) (cleaned up).

## ARGUMENT

I.     **FOIA Does Not Provide an Adequate Remedy for Challenging the Legal Validity of the Records Rule.**

Defendants first argue that Plaintiffs' APA claims should be dismissed under Rule 12(b)(6) because FOIA provides an adequate alternative remedy for the relief sought in their complaint. *See* 5 U.S.C. § 704 (rendering review available under the APA to address unlawful "final agency action for which there is no other adequate remedy in a court"). This argument both misreads Plaintiffs' complaint and misapplies the law. Plaintiffs' complaint does not seek the disclosure or publication of *any* specific agency records, which is the primary remedy FOIA would provide. Instead, it seeks to vacate, or otherwise enjoin Defendants from enforcing, certain applications of an agency rule— a classic APA claim seeking a remedy that is only available through the APA, not FOIA. Nor could Plaintiffs use the federal FOIA to obtain the local records affected by the Rule, because those records are generally not in ICE's possession and thus shielded from disclosure through FOIA. The federal FOIA, therefore, does not provide an adequate remedy for the relief sought in Plaintiffs' complaint.

The APA provides a federal cause of action to vacate, or set aside, arbitrary, capricious, or unlawful agency actions. 5 U.S.C. § 706(2). As a final agency rule published in the Federal Register, the Records Rule undoubtedly qualifies an "agency action" subject to review under the APA. *See, e.g., Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799 (2024) (involving an APA challenge to a published agency rule). An alternative statutory scheme does not preclude an APA claim under 5 U.S.C. § 704 unless it provides largely the same relief that the plaintiff is seeking. Where the proposed alternative scheme offers relief that is "'doubtful'" or not "of 'the same genre'" as that offered by the APA, the APA cause of action remains available. *El Rio Santa Cruz Neighborhood Health Ctr. v. Dep't of Health and Hum. Servs.*, 396 F.3d 1265,

1270, 1271 (D.C. Cir. 2005) (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 901 (1988) and *Women's Equity Action League v. Cavazos*, 906 F.2d 742, 751 (D.C. Cir. 1990)). The "alternative remedy" language of § 704 "should not be construed to defeat the [APA's] central purpose of providing a broad spectrum of judicial review of agency action." *Bowen*, 487 U.S. at 903. Generally, this means that the alternative scheme would not preclude APA review unless there is "a showing of clear and convincing evidence" that the alternative statute meant to "restrict access to judicial review" under the APA, such as when it "affords an opportunity for *de novo* review of the agency action." *El Rio Santa Cruz*, 396 F.3d at 1270 (cleaned up).[1]

Defendants claim that the D.C. Circuit's decision in *Citizens for Resp. & Ethics in Washington v. Dep't of Just.*, 846 F.3d 1235 (D.C. Cir. 2017) ("*CREW*"), stands for the broad proposition that "FOIA provides an adequate remedy such that review under the APA is barred." Defs.' Mot. to Dismiss at 6, ECF No. 21. Defendants overstate and misapply *CREW*'s holding. The D.C. Circuit in *CREW* did not announce a *per se* rule that FOIA supersedes the APA whenever agency records are implicated. Instead, the *CREW* court simply held that FOIA provided an adequate remedy for the *specific relief* requested in that plaintiff's complaint—i.e., the production of specific records. 846 F.3d at 1244-46.

The plaintiff in *CREW* alleged a violation of FOIA's "reading-room" provision, 5 U.S.C. § 552(a)(2), which requires that certain final opinions and policy positions be made available in electronic format. *CREW*, 846 F.3d at 1239. CREW brought an APA claim alleging that the Department of Justice's Office of Legal Counsel (OLC) unlawfully failed to proactively publish

---

[1] The adequate remedy bar of § 704 is not a jurisdictional inquiry. It simply determines whether a cause of action is available under the APA. *See Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 621 (D.C. Cir. 2017) ("[W]e have several times recognized that the . . . adequate remedy bar of § 704 determine[s] whether there is a cause of action under the APA, not whether there is federal subject matter jurisdiction.")

some of their legal opinions. Under the APA, CREW sought an injunction with four categories of relief:

> **First**, the injunction would have prospective effect—*i.e.*, it would apply to opinions not yet written. **Second**, it would impose an affirmative obligation to disclose on OLC—*i.e.*, without need for a specific prior request. **Third**, it would mandate disclosure to the *public*, as opposed to just CREW. **Fourth**, it would require OLC to make available to the public an index detailing all documents subject to the reading-room provision.

*Id.* at 1241 (emphasis added). To determine whether FOIA provided an adequate alternative remedy for the APA relief sought by the plaintiff, the court examined whether FOIA could provide each of the four pieces of requested relief. *Id.* at 1241-44.

The D.C. Circuit first recognized that FOIA allows courts "'to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.'" *Id.* at 1240 (quoting 5 U.S.C. § 552(a)(4)(B)). The court therefore concluded that FOIA could provide the first two categories of relief the plaintiff sought (i.e., the prospective and affirmative disclosure of OLC opinions). *Id.* at 1242. As for the third and fourth categories, the Court reasoned that FOIA only provides a limited remedy that would make the requested records available to the plaintiff as a FOIA complainant, but not to the public generally. *Id.* at 1243. In sum, the Court concluded that "FOIA makes available all the relief sought by CREW except disclosure to the public. . . ." *Id.* at 1244. Recognizing that an *adequate* remedy that would preclude APA review need not be an *identical* remedy, the court held that FOIA offered the plaintiff an adequate remedy because there was "no yawning gap between the relief FOIA affords and the relief CREW seeks under the APA." *Id.* at 1245-46. Thus, because a FOIA claim could result in an order that "CREW itself can gain access to all the records it seeks," *id.* at 1246— including a prospective injunction for future publication—APA review was unavailable to them.

Since *CREW*, courts have taken the same approach of evaluating whether the specific relief requested under the APA could be adequately achieved under a different statute. Where the APA claims are "simply a restatement of a claim brought under another statute," this Court has concluded that "the APA claim[s would be] properly dismissed under section 704 of the APA." *Galvin v. Del Toro*, 586 F. Supp. 3d 1, 12 (D.D.C. 2022) (cleaned up).  That is why, in past cases in which courts in the D.C. Circuit have found the federal FOIA to be an adequate alternative remedy to the APA, it has consistently been because the plaintiffs in those cases sought the disclosure of specific federal agency records. *See Elec. Priv. Info. Ctr. v. Internal Revenue Serv.*, 910 F.3d 1232, 1244 (D.C. Cir. 2018) ("FOIA empowers a reviewing court to 'enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant'—the very relief EPIC seeks."). *See also Powell v. Yellen*, No. 22-5200, 2023 WL 8947132, at *1 (D.C. Cir. Dec. 28, 2023) ("He nevertheless sued the agency in the instant case to obtain additional documents under the Internal Revenue Code" via the APA); *Greenpeace, Inc. v. Dep't of Homeland Sec.*, 311 F. Supp. 3d 110, 126 (D.D.C. 2018) ("[T]his is a run-of-the-mill FOIA case involving a request that DHS turn over specific information it has withheld. Plainly, FOIA offers an 'adequate remedy . . . .'"). *Cf. Poss v. Kern*, No. 23-CV-2199, 2024 WL 4286088, at *6 (D.D.C. Sept. 25, 2024) (Privacy Act precluded APA review because "[t]he relief that Poss seeks through the APA—removal and deletion of the allegedly defamatory report from DOD's database . . . is available under the Privacy Act"); *Galvin*, 586 F. Supp. 3d. at 12 (10 U.S.C. § 628(g) precluded APA review because it provided an adequate remedy that "is nearly identical" to the APA).

But this case presents the exact opposite situation. While FOIA may have been an adequate source of relief for the plaintiffs in the cases above, it is a wholly inadequate alternative in this

case for one simple reason: Plaintiffs are not asking this Court to order Defendants to disclose or publish any specific agency records. They are, instead, challenging the scope and propriety of a federal regulation (i.e., the Records Rule) that purports to preempt state public records laws and prevents Plaintiffs from obtaining local records through state FOIA procedures. Such challenges could not possibly be raised via the federal FOIA. Unlike the claims in *CREW*, Plaintiffs' claims here do not require this court order disclosure of any particular record under that Act. They instead require this Court to construe a regulation promulgated by Defendants (the Records Rule) and the statute purportedly authorizing it (the Immigration and Nationality Act), and to vacate and enjoin that regulation based on its construal of that statute and the regulatory history. Such claims are precisely why the APA's independent judicial review provision exists.

Taking the same approach that the D.C. Circuit did in *CREW*, it is evident that FOIA does not allow Plaintiffs to achieve any of the injunctive relief they seek in their complaint.[2] Plaintiffs ask this Court to:

> **[1]** Vacate and set aside the Records Rule insofar as it prohibits state and local entities, such as county jails, from disclosing local records that ICE does not possess . . . **[and 2]** Enjoin and restrain Defendants, their agents, servants, employees, attorneys, and persons in active concert or participation with any of the Defendants from (1) implementing or enforcing the Records Rule insofar as it prohibits or inhibits state and local entities, such as county jails, from disclosing local records not in ICE's possession; and (2) taking any other action to prohibit or inhibit state and local entities, such as county jails, from disclosing records ICE does not have . . . .

Compl. at ¶¶ 86, 89. FOIA cannot provide either category of requested relief. The essential form of relief under FOIA is the production of agency records that are responsive to a proper FOIA request or that fall within FOIA's reading-room provision. *See* 5 U.S.C. § 552(a); *see also CREW*,

---

[2] Defendants do not seek to dismiss Plaintiffs' requests for declaratory relief, which are brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. *See* Compl. at ¶¶ 10, 87-88.

846 F.3d at 1240. FOIA does not, on the other hand, authorize courts to vacate or set aside a federal regulation, nor does it allow courts to enjoin agency actions that do not directly pertain to the production of improperly withheld records. *See* 5 U.S.C. § 552(a)(4)(B). And whereas CREW could have used FOIA to "gain access to all the records it seeks," *CREW*, 846 F.3d at 1246, FOIA would not allow this Court to order that *state and local* detention facilities turn over any record that Plaintiffs seek from them under the state FOIA. Put differently: if Plaintiffs had brought their current allegations under the federal FOIA, they will have achieved nothing—because they are not seeking the disclosure of any agency records from Defendants directly. For that simple reason, FOIA does not provide an adequate remedy to Plaintiffs' APA claims. Thus, there remains a "yawning gap between the relief FOIA affords and the relief [Plaintiffs] seek[] under the APA," *CREW*, 846 F.3d at 1246. As such, FOIA is clearly not an adequate alternative remedy to the APA here.

Defendants point out that Plaintiffs previously submitted related federal and state FOIA requests. But those FOIA requests are not being litigated here.[3] *See* Defs' Mot. to Dismiss at 8 ("[T]here is currently no FOIA request before the Court. . ."). Instead, Plaintiffs are litigating the Records Rule's application to such FOIA requests and any other similar request for local immigration detention records. That is why Plaintiffs advance classic APA claims, the favorable

---

[3] Moreover, FOIA is not the only public-access vehicle that is impacted by the Records Rule, which broadly prohibits state and local agencies from "disclos[ing] or otherwise permit[ting] to be made public" information related to individuals detained for immigration purposes. 8 C.F.R. ¶ 236.6. In this case, Plaintiffs were injured by the Records Rule during their pursuit of locally-created and -maintained public records via the Michigan FOIA. In a different case, another plaintiff could well be injured by the Records Rule while attempting to obtain the same information through other means, such as a subpoena or a departmental request for medical records. *See, e.g.,* Mich. Dep't of Corr., *Requesting Medical Records* (updated Oct. 1, 2024), https://www.michigan.gov/corrections/our-operations/bhcs/requesting-medical-records (last visited Jun. 30, 2025). In other words, a lawsuit challenging the scope of the Records Rule is not inherently a lawsuit about FOIA.

resolution of which would not result in the disclosure of records but would instead result in classic APA relief: the vacatur of a final agency rule.

Moreover, even if individual FOIA suits could produce the records Plaintiffs seek, that piecemeal relief would not be an adequate alternative under § 704. Courts have repeatedly found individual one-off remedies not to be "adequate" replacements for the APA where they would fail to result in a prospective injunction of an unlawful policy that the APA suit sought. *See, e.g.*, *Cohen v. United States*, 650 F.3d 717, 733 (D.C. Cir. 2011) (holding that individual taxpayer refund suits were not an adequate remedy for a challenge to unlawful IRS procedures and noting that "it would be cold comfort to direct Appellants to proceed in a series of individual suits, submitting themselves one by one to the very refund procedures that they claim to be unlawful"); *Aracely v. Nielsen*, 319 F. Supp. 3d 110, 140 (D.D.C. 2018) (holding that the availability of individual suits for habeas relief was not an "adequate remedy" for detainees who sought to challenge "an unlawful, nationwide detention policy" under the APA (quoting *R.I.L-R. v. Johnson*, 80 F. Supp. 3d 164, 186 (D.D.C. 2015))); *Scenic America, Inc. v. U.S. Dep't of Transp.*, 983 F. Supp. 2d 170, 184 (D.D.C. 2013) (availability of separate lawsuits to challenge individual permitting decisions not an adequate remedy in APA case challenging an agency interpretation about whether permits could be issued at all in the first place). *Cf. Gonzalez Boisson v. Pompeo*, 459 F. Supp. 3d 7, 17 (D.D.C. 2020) (statutory proceedings for challenging revocation of a passport for an individual residing abroad not adequate alternative to APA where statutory process was lengthy and cumbersome and "might well never result in a determination of the underlying legal question").

And the unique circumstances in this case further highlight why individual, one-off federal FOIA lawsuits would be inadequate: Defendants generally do not possess, and therefore do not produce via federal FOIA, the locally-created and -maintained records Plaintiffs seek—which is

precisely why Plaintiffs regularly seek these records from the local detention facilities themselves through the Michigan FOIA. As described in the Complaint, Plaintiffs have filed two lawsuits challenging denials of federal FOIA requests for records related to individuals detained on behalf of Defendant ICE in Michigan. *See* Compl. ¶¶ 50-52, 59-62. The lawsuit involving Jilmar Ramos-Gomez's records concluded with ICE producing some records, but *not* the vast majority of records created and maintained by the county jail that detained him—because ICE did not possess those local records. *See id.* at ¶ 52; Ex. B to Compl. In the lawsuit involving Luisa Martinez Orozco's records, a rolling production has recently commenced, but based on prior practice, there is no reason to believe that ICE will produce all county-created records that it does not possess. But *even if* this one lawsuit leads to the production of local records that happen to be in ICE's possession, it remains clear—based on all of Plaintiff's other experiences seeking Mr. Ramos-Gomez's and Ms. Martinez Orozco's records, and based on the experience of other similarly situated state FOIA requesters, *see* Compl. ¶¶ 63-67—that the Records Rule has generally obstructed access to countless local records pertaining to detained immigrants despite intensive FOIA litigation. And at bottom, Defendants do not dispute, nor could they, that Plaintiffs (and other entities who have sought covered records) will be unable to obtain local records covered by the Records Rule via state FOIA requests prospectively.

Accordingly, because Plaintiffs' complaint does not ask this Court to order Defendants to disclose any agency records, because the APA is the proper vehicle for challenges to the propriety of a federal regulation, and because the relevant local records are generally not available through the federal FOIA, this Court should deny Defendants' 12(b)(6) motion to dismiss.

## II.     Plaintiffs Have Established This Court's Jurisdiction Over Their APA Claims.

Defendants' second argument—that Plaintiffs' injuries are too speculative to establish standing—falls woefully flat. Plaintiffs filed a detailed complaint that plausibly alleges that (1) Defendants applied the Records Rule in such a way that has harmed, and will continue to harm, Plaintiffs; and (2) Defendants' application of the Records Rule violates the APA, a federal statute. Accepting the facts alleged in the complaint as true and drawing all inferences in favor of Plaintiffs, it is abundantly clear that Plaintiffs have standing to pursue their APA claims before this Court.

To establish Article III standing, a plaintiff must allege that they have "'suffered an injury in fact' that 'is fairly traceable to the challenged action of the defendant' and it must be 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Banner Health v. Price*, 867 F.3d 1323, 1333-34 (D.C. Cir. 2017) (quoting *Friends of the Earth v. Laidlaw Env't Servs.*, 528 U.S. 167, 180-81 (2000)). An injury rises above the level of mere speculation when it is "actual" or when "the risk of harm is sufficiently imminent and substantial." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423, 435 (2021). To obtain prospective relief based on injuries that are likely to continue or repeat in the future, a plaintiff must typically "show[] that there is a substantial risk that the harm will recur." *Narragansett Indian Tribal Hist. Pres. Off. v. FERC*, 949 F.3d 8, 13 (D.C. Cir. 2020) (cleaned up) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)).

Defendants' standing argument boils down to a contention that Plaintiffs cannot establish standing because "there is currently no FOIA request before the Court where [the Records Rule] is at issue." Defs' Mot. to Dismiss at 8. That is, in the absence of a pending FOIA request directly before this Court, Defendants claim that any ongoing injury inflicted on Plaintiffs by the Records Rule is merely "hypothetical or speculative." *Id.* But Plaintiffs' complaint plausibly alleges not

only that the Records Rule has already injured Plaintiffs multiple times, but that it is highly likely that local facilities will continue to withhold records based on the Records Rule when—not if—Plaintiffs submit their next Michigan FOIA requests. Compl. at ¶¶ 68-71. Those allegations are more than sufficient to overcome a Rule 12(b)(1) motion to dismiss.

At the motion to dismiss stage, a plaintiff needs only to show that their complaint "contain[s] sufficient factual matter, accepted as true, to support an inference of standing that is plausible on its face." *Air Excursions*, 66 F.4th at 277 (cleaned up). Plaintiffs have done just that. As their complaint details, Plaintiffs are repeat organizational players in the pursuit of government transparency and immigrant rights. Compl. at ¶¶ 11-12, 28. They regularly submit public records requests for information related to people detained for immigration purposes at the state and local level, and importantly, they plan to continue doing so. *Id.* at ¶¶ 33-36, 68-71. *See Ams. for Fair Treatment v. United States Postal Serv.*, 663 F. Supp. 3d 39, 51 (D.D.C. 2023) (noting that a plaintiff who "frequently files FOIA requests" can establish standing based on future harm). In recent attempts to obtain those locally-created and -maintained records via the Michigan FOIA, county jails have denied Plaintiffs' FOIA requests because the Records Rule supposedly prohibited them from disclosing information related to people detained on behalf of Defendant ICE. Compl. at ¶¶ 41-42, 56-58; *see also id.* at ¶¶ 63-67 (plausibly pleading that other FOIA requestors have had state FOIA requests denied by local jails around the country on the same basis).

Indeed, Calhoun County, one of the Michigan counties that detains people on behalf of Defendant ICE, confirmed to Plaintiffs' counsel that Defendant ICE *instructed* the county to deny future Michigan FOIA requests and withhold otherwise responsive local records on the basis of the Records Rule. Compl. at ¶ 48; *see also* Ex. A to Compl. Calhoun County's position, based on ICE's instructions, is thus that the Records Rule "outright prohibits the county from releasing these

records (records relating to detainees) . . . ." Ex. A to Compl. Calhoun County also informed Plaintiffs' counsel that ICE had expressly rejected a proposal that, whenever a state FOIA request is made for immigration detention records, those records could be provided to ICE so that ICE could produce them through the federal FOIA. *See* Compl. at ¶ 48. That rejected process that would have ultimately put the records in the possession of ICE, making them available via federal FOIA.[4] Compl. at ¶¶ 48-49. Unsurprisingly, when Plaintiffs subsequently submitted state FOIA requests in 2024 for records related to Luisa Martinez Orozco, Calhoun County again rejected those requests on the supposed basis of the Records Rule. Compl. at ¶¶ 54-58. And with litigation underway over the federal FOIA request for Ms. Martinez Orozco's records, it remains unclear if Plaintiffs will ever obtain all of the records they need to adequately offer her legal assistance— particularly the locally-created and -maintained records not in ICE's possession. Therefore, the likelihood that the Records Rule will continue to obstruct Plaintiffs' access to local immigration records is much more than conjecture. To the contrary, by one Michigan county's own admission and by Plaintiffs' subsequent experiences with Michigan FOIA requests in 2024, it is virtually guaranteed.

Plaintiffs' claim to standing is firmly rooted in jurisprudence binding on this Court. Just last year, the D.C. Circuit held that a plaintiff established standing in an analogous scenario—i.e.,

---

[4] ICE's rejection of this review proposal and its instruction to use the Records Rule to deny future FOIA requests came during settlement negotiations between Plaintiffs and Calhoun County in a Michigan FOIA lawsuit challenging the denial of a request for records related to Jilmar Ramos-Gomez. *See* Compl. at ¶¶ 40-45. While Calhoun County did end up producing the local detention records Plaintiffs sought, it did so in highly anomalous circumstances: after a unanimous Michigan Supreme Court held that Calhoun County was improperly withholding records, and after ICE explicitly authorized the county to release the records, making way for settlement. *See id.* at ¶¶ 46-49. But Defendants do not deny Plaintiffs' allegations about the Records Rule, i.e., that Defendants rely on the Records Rule to prevent detention contractors from disclosing information related to detained immigrants, even when ICE does not actually possess the requested records.

where the plaintiff faced multiple instances of past harm and filed suit because it reasonably expected those harms to recur. In *Columbia Gulf Transmission, LLC v. FERC*, the D.C. Circuit considered a lawsuit seeking prospective injunctive relief to prevent interruptions to the transfer of natural gas between two pipelines. 106 F.4th 1220 (D.C. Cir. 2024). Texas Eastern, the owner of one of the pipelines, occasionally failed to maintain the gas pressure levels needed to push the natural gas travelling through its pipeline system into the pipeline system owned by Columbia Gulf Transmission. *Id.* at 1226-27. This twice caused service interruptions requiring Columbia Gulf to "curtail"—or limit the volume of—the gas flowing through its pipeline, harming its own bottom line. *Id.*

In order to prevent another interruption in the future, Columbia Gulf sought a prospective order requiring Texas Eastern to maintain sufficient gas pressure levels. *Id.* But there was no ongoing interruption at the time Columbia Gulf filed suit. Instead, "[d]rawing on its experiences with past curtailments, Columbia Gulf allege[d] that similar curtailments are likely to occur in the future." *Id.* at 1228. The D.C. Circuit held that this allegation established Columbia Gulf's standing for prospective relief, reasoning that:

> Given the recurring past problems with Texas Eastern's pressure levels and lack of any material change to suggest they are resolved, there is a substantial risk of additional curtailments in the future. This makes . . . the imminent future risks associated with future curtailments[] cognizable as injuries in fact.

*Id.* at 1229. So, too, here: Plaintiffs have had "recurring past problems" with the Records Rule obstructing their access to local detention records, and given the "lack of any material change to suggest" Defendants have changed their approach to the Records Rule, "there is a substantial risk of additional [FOIA denials] in the future." *Id. See also Richardson v. Trump*, 496 F. Supp. 3d 165, 179 (D.D.C. 2020) (finding that plaintiffs established standing by showing that a USPS policy change "caused and will continue to cause delays in the delivery of mail."); *Ams. for Fair*

*Treatment*, 663 F. Supp. 3d at 51 (a plaintiff who "frequently files FOIA requests" can establish standing based on future harm).

Moreover, it is "likely, as opposed to merely speculative," that this ongoing injury "will be redressed by a favorable decision" in this case. *Banner Health*, 867 F.3d at 1333-34 (cleaned up). A ruling that the Records Rule is unlawful and cannot be relied upon to prohibit state and local government agencies from disclosing local records related to immigration detention would directly remedy Plaintiffs' injuries. The Records Rule's application to such records is the *but-for reason* that Michigan counties are improperly withholding local records related to detained immigrants. *See* Ex. A to Compl. Thus, taking all facts and inferences in Plaintiffs' favor, Plaintiffs have clearly established that their injuries from the Records Rule are concrete and likely enough to give them standing to sue.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask this Court to deny Defendants' motion to dismiss and allow these quintessential APA claims to proceed before this Court.

Respectfully submitted,

*/s/ Ramis J. Wadood*
Ramis J. Wadood*
Philip E. Mayor*
Bonsitu Kitaba-Gaviglio*
American Civil Liberties Union Fund of
Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6800
rwadood@aclumich.org
pmayor@aclumich.org

Eunice H. Cho (D.C. Bar #1708073)
American Civil Liberties Union Foundation
National Prison Project
915 Fifteenth Street NW, 7th Floor
Washington, DC 20005
Phone: (202) 548-6616
echo@aclu.org

Spencer Amdur*                                    Kyle Virgien*
My Khanh Ngo (D.C. Bar #CA00219)                  American Civil Liberties Union Foundation
American Civil Liberties Union Foundation         National Prison Project
Immigrants' Rights Project                        425 California Street, 7th Floor
425 California Street, 7th Floor                  San Francisco, CA 94104
San Francisco, CA 94104                           Phone: (415) 343-0770
Phone: (415) 343-0770                             kvirgien@aclu.org
samdur@aclu.org
mngo@aclu.org

                                                  Attorneys for Plaintiffs

                                                  *Admitted *pro hac vice*

Dated: July 2, 2025