UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF MICHIGAN, et al.,<br><br>        Plaintiffs,<br><br>        v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>        Defendants. | Civil Action No. 25-0184 (AHA) |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS**

Defendants, through undersigned counsel, respectfully reply in further support of their motion to dismiss Plaintiffs' complaint under Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6).

Defendants largely rely on the arguments in their opening brief. Plaintiffs have not stated a claim under the Administrative Procedure Act ("APA") because there is another adequate remedy for the wrong they complain of: the Freedom of Information Act ("FOIA"). *See* Mot. Dismiss at 7-9, ECF No. 21. Otherwise, Plaintiffs have not established an ongoing case or controversy. *Id.* at 9-11.

As explained before, the D.C. Circuit has already held that FOIA provides an adequate remedy such that review under the APA is barred:

> By these lights, we have little doubt that FOIA offers an "adequate remedy" within the meaning of section 704, as it exhibits all of the indicators we have found to signify Congressional intent. FOIA contains an express private right of action and provides that review in such cases shall be "*de novo*." 5 U.S.C. § 552(a)(4)(B). As opposed to the "uncertain" and "doubtful" remedies we have rejected as insufficient to preclude APA review, our precedent establishes that a plaintiff . . . may bring a FOIA claim to enforce the reading-room provision. Indeed, in FOIA Congress

established "a carefully balanced scheme of public rights and agency obligations designed to foster greater access to agency records than existed prior to its enactment." The creation of both agency obligations and a mechanism for judicial enforcement in the same legislation suggests that FOIA itself strikes the balance between statutory duties and judicial enforcement that Congress desired. Considered together, FOIA offers [the plaintiff] precisely the kind of "special and adequate review procedure[ ]" that Congress immunized from "duplic[ative]" APA review.

*Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Just.*, 846 F.3d 1235, 1245-46 (D.C. Cir. 2017) (citations omitted); *see also id.* at 1246 ("FOIA offers an 'adequate remedy' within the meaning of section 704 such that [the plaintiff's] APA claim is barred.").

In response, Plaintiffs' counter that FOIA does not provide an adequate remedy because it does not provide the specific relief that they seek, that is, vacatur of 8 C.F.R. § 236.6. *See* Pls.' Opp'n Mot. Dismiss ("Pls.' Opp'n") at 5, ECF No. 25 ("the federal FOIA provides no adequate remedy because it does not provide the specific remedy that Plaintiffs seek: vacatur of a federal rule"). But that logic compares apples to oranges. Whether relief is adequate and whether it is what a plaintiff specifically seeks are two different inquiries. Relief can be adequate notwithstanding a plaintiff's desire for more. The D.C. Circuit addressed this issue already in *CREW* when it held that FOIA precluded an APA claim to compel an agency to meet its disclosure obligations under the "reading-room" provision of FOIA. *CREW*, 846 F.3d at 1245 ("Because section 704 requires only an *adequate* alternative, 'this court has held that the alternative remedy need not provide relief *identical* to relief under the APA' in order to have preclusive effect." (emphasis in original)).

Here, as explained in Defendant's opening motion, if a plaintiff is dissatisfied with an agency's productions under FOIA, the plaintiff can sue to compel the agency to produce the records requested. 5 U.S.C. § 552(a)(4)(B) ("On complaint, the district court . . . has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."). Plaintiffs' complaint and opposition brief

show that they have pursued this avenue with two federal FOIA requests. And although they complain about how their requests were processed in those cases, those complaints go to the merits of those cases. Those complaints do not show that FOIA, as a whole, does not provide an adequate remedy. *CREW*, 846 F.3d at 1246 ("[O]ur determination that FOIA is the proper vehicle for [the plaintiff's] claim is entirely distinct from the question whether [the plaintiff] is entitled to relief. That merits question . . . awaits a different day and a different case.").

Otherwise, Plaintiffs admit that they do not tie this suit to any specific request. Pls.' Opp'n at 14 ("Plaintiffs are not asking this Court to order Defendants to disclose or publish any specific agency records."); *id.* ("Plaintiffs' claims here do not require this court order disclosure of any particular record under [FOIA]."); *id.* at 15 ("But those FOIA requests are not being litigated here."). As such, there is no case or controversy here. Were the Court to render an opinion about the validity of 8 C.F.R. § 236.6 and whether it should be vacated, it would be advisory in nature only, which is insufficient to establish standing. *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) ("A federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them. Its judgments must resolve a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." (citation modified)).

Plaintiffs try to circumvent this reality by suggesting that Defendants have an "unlawful policy" of obstructing their access to records for inmates detained in local facilities, and therefore they do not need to have a pending FOIA request to present a live case or controversy. *See* Pls.' Opp'n at 16. But Plaintiffs' allegations plainly do not support such a theory. First, whether local detention facilities, who are not parties to this case, withhold records because of 8 C.F.R. § 236.6

3

does not reflect an "unlawful policy" of Defendants. If anything, it shows local facilities complying with preemption. *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982) ("Federal regulations have no less pre-emptive effect than federal statutes."). As explained in Defendants' opening motion, 8 C.F.R. § 236.6 provides the proper balance between the desire to have records and countervailing federal interests:

> [T]he rule ensures that any disclosure of information pertaining to federal detainees will be governed by the federal Freedom of Information Act (FOIA), 5 U.S.C. § 552. The FOIA provides generally for disclosure of records by federal agencies, but contains exceptions that Congress believed crucial to the effective functioning of the national government. *See, e.g.*, 5 U.S.C. § 552(b)(1), (7)(A), (C), (E), (F). The rule here ensures that federal interests will be protected by channeling information requests through the FOIA. In addition, the rule guarantees that information regarding federal detainees will be released under a uniform federal scheme rather than the varying laws of fifty states. . . . By channeling requests for information through the FOIA, which contains a privacy exception, the rule also protects detainees' privacy. Just as the government has a substantial interest in protecting legitimate national security, intelligence and law enforcement functions under the FOIA, detainees may have a substantial privacy interest in their names and the personal information connected with their status as detainees. 5 U.S.C. § 552(b)(1), (6), (7)(A), (C), (E). For example, individuals who were originally detained because of their possible connection to terrorism, have an overwhelming interest in not being connected with such activity. And particularly with respect to those individuals cooperating with the government's law enforcement investigations, there are powerful reasons why such persons would wish to conceal their identities and whereabouts. Indeed, other INS regulations expressly shield from disclosure information pertaining to or contained in an asylum application. *See* 8 C.F.R. § 208.6(a). Contrary to some of the commenters' suggestions, the fact that certain detainees may wish to publicly identify themselves, which they are free to do, in no way undermines this assessment.

Final Rule, Release of Information Regarding Immigration and Naturalization Service Detainees in Non-Federal Facilities, 68 Fed. Reg. 4364, 4366, 2003 WL 179622 (Jan. 29, 2003).

Second, Plaintiffs' allegations related to the two federal requests do not show an "unlawful policy." Assuming without conceding that Defendants' responses to Plaintiffs' FOIA requests in its two federal cases were inadequate, two cases does not show an agency-wide policy or practice, especially when ICE received 59,300 FOIA requests total in fiscal year 2024. *See*

4

https://www.dhs.gov/sites/default/files/2025-05/0505_25-PRIV-FOIA-Annual-Report-FY-2024-PDF.pdf. Further, nothing about the two cases Plaintiffs mention shows that 8 C.F.R. § 236.6 is itself "unlawful." In the Ramos Gomez case, Plaintiffs concede that ICE produced some responsive records, albeit not all that they believed existed. *See* Pls.' Opp'n at 8; Compl. ¶¶ 50-52. The issue, therefore, was whether the agency did an adequate search in that case, not whether a regulation was unlawful. But since Plaintiffs settled the case, the issue never went to summary judgment. And in the Martinez Orozco case, the lawsuit is ongoing, and the parties have agreed to a rolling production. Pls.' Opp'n at 8; Stipulated Order Regarding Production of Records, ECF No. 21-1. Plaintiffs repeatedly state that "there is no reason to believe that ICE will produce all county-created records that it does not possess," Pls.' Opp'n at 8, 17, but that is speculation and conclusory, and thus the Court need not credit the assertions.

The Court should dismiss this case for the reasons above and those explained in Defendants' motion.

Date: July 31, 2025  
Washington, DC

Respectfully submitted,

JEANINE FERRIS PIRRO  
United States Attorney

By:   */s/ Sam Escher*  
SAM ESCHER, D.C. Bar #1655538  
Assistant United States Attorney  
601 D Street, NW  
Washington, DC 20530  
(202) 252-2531  
Sam.Escher@usdoj.gov

*Attorneys for the United States of America*