UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF MICHIGAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>Defendants. | Civil Action No. 25-0184 (AHA) |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**BACKGROUND** ........ **1**

**LEGAL STANDARDS** ........ **4**

I. Summary Judgment in an APA Case ........ 4

II. Facial Challenge to Final Agency Action ........ 5

**ARGUMENTS** ........ **6**

I. The Regulation Does Not Exceed Its Statutory Authority ........ 6

II. The Regulation Is Not Arbitrary, Capricious, or Otherwise Not in Accordance with the Law ........ 7

**CONCLUSION** ........ **10**

# TABLE OF AUTHORITIES

## Cases

741 F.3d 1326 (D.C. Cir. 2014) ........ 4
*Am. Bankers Ass'n v. Nat'l Credit Union Admin.*,
934 F.3d 649 (D.C. Cir. 2019) ........ 5
*Am. Hosp. Ass'n v. Nat'l Lab. Rels. Board*,
499 U.S. 606 (1991) ........ 10
*Am. Wildlands v. Kempthorne*,
530 F.3d 991 (D.C. Cir. 2008) ........ 5
*Barnhart v. Thomas*,
540 U.S. 20 (2003) ........ 5
*Brennan v. Dickson*,
45 F.4th 48 (D.C. Cir. 2022) ........ 6, 8, 9, 10
*Dist. Hosp. Partners, L.P. v. Burwell*,
786 F.3d 46 (D.C. Cir. 2015) ........ 5
*Food & Drug Admin. v. Wages & White Lion Invs., LLC*,
604 U.S. 542 (2025) ........ 8, 9
*Jurewicz v. U.S. Dep't of Agric.*,
891 F. Supp. 2d 147 (D.D.C. 2012) ........ 4
*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) ........ 6
*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) ........ 7
*Nat'l Ass'n of Reg. Util. Comm'rs v. Fed. Energy Regul Comm'n*,
964 F.3d 1177 (D.C. Cir. 2020) ........ 5
*New Mexico Cattle Growers' Ass'n v. U.S. Fish & Wildlife Serv.*,
148 F.4th 755 (D.C. Cir. 2025) ........ 7
*Sector Colls. & Univs. v. Duncan*,
681 F.3d 427 (D.C. Cir. 2012) ........ 5, 6, 8
*Sherley v. Sebelius*,
644 F.3d 388 (D.C. Cir. 2011) ........ 5, 10
*United States v. Salerno*,
481 U.S. 739 (1987) ........ 5

## Statutes

5 U.S.C. § 552 ........ 8
5 U.S.C. § 552(b)(1) ........ 8
5 U.S.C. § 553(b)(B) ........ 1
5 U.S.C. § 706 ........ 5
5 U.S.C. § 706(2)(A) ........ 4, 7
5 U.S.C. § 706(2)(C) ........ 4, 6, 7
8 U.S.C. § 1103(a)(1) ........ 2, 3, 6, 7
8 U.S.C. § 1103(a)(2) ........ 7

**Rules**

Fed. R. Civ. P. 56(a) .......... 4

**Regulations**

8 C.F.R. § 208.6(a) .......... 8
8 C.F.R. § 236.6 .......... passim
*Non-Federal Facilities*,
67 Fed. Reg. 19508, 2002 WL 602768 (Apr. 22, 2002) .......... 2
*Non-Federal Facilities*,
68 Fed. Reg. 4364, 2003 WL 179622 (Jan. 29, 2003) .......... 1, 9

**Other Authorities**

67 Fed. Reg. 19508 .......... 2
68 Fed. Reg. 4364 .......... 1, 9

Defendants U.S. Immigration and Customs Enforcement ("ICE"), Acting Director of ICE in his official capacity, U.S. Department of Homeland Security ("DHS"), and Secretary of DHS in his official capacity (collectively "Defendants"), through undersigned counsel, respectfully move for summary judgment under Federal Rule of Civil Procedure ("Rule") 56. For the reasons below, American Civil Liberties Union of Michigan and American Civil Liberties Union Fund of Michigan (collectively "Plaintiffs" or "ACLU") have not shown that 8 C.F.R. § 236.6 exceeds its statutory authority or is arbitrary and capricious under the Administrative Procedure Act ("APA"). Compl. ¶¶ 72-84, ECF 1.

## BACKGROUND

After September 11, 2001, with national security concerns heightened, the Department of Justice determined that it was necessary for information regarding noncitizens detained in the United States to be handled with great care. Final Rule, *Release of Information Regarding Immigration and Naturalization Service Detainees in Non-Federal Facilities*, 68 Fed. Reg. 4364, 4366, (Jan. 29, 2003). Among other things, the Department determined that the inappropriate release of information concerning detained noncitizens could provide those who were averse to the United States with intelligence that was harmful to national security and law enforcement interests. *Id.* Deeming the circumstances an emergency, the Department used the good cause exception to rulemaking to first publish an interim rule with a request for comments, followed by a final rule. *Id.* at 4365 (refuting concerns that the interim rule was improperly promulgated under the APA because of the good cause exception under 5 U.S.C. § 553(b)(B) and (d)(3)). The interim rule read as follows, and has not changed since its inception:

> No person, including any state or local government entity or any privately operated detention facility, that houses, maintains, provides services to, or otherwise holds

> any detainee on behalf of the Service[1] (whether by contract or otherwise), and no other person who by virtue of any official or contractual relationship with such person obtains information relating to any detainee, shall disclose or otherwise permit to be made public the name of, or other information relating to, such detainee. Such information shall be under the control of the Service and shall be subject to public disclosure only pursuant to the provisions of applicable federal laws, regulations and executive orders. Insofar as any documents or other records contain such information, such documents shall not be public records. This section applies to all persons and information identified or described in it, regardless of when such persons obtained such information, and applies to all requests for public disclosure of such information, including requests that are the subject of proceedings pending as of April 17, 2002.

8 C.F.R. § 236.6; *see also* Interim Rule, *Release of Information Regarding Immigration and Naturalization Service Detainees in Non-Federal Facilities*, 67 Fed. Reg. 19508, 19511 (Apr. 22, 2002).

Under federal law, the Attorney General was – and now the Secretary of Homeland Security is – charged with the administration and enforcement of the Nation's immigration laws. 8 U.S.C. § 1103(a)(1) ("The Secretary of Homeland Security shall be charged with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens[.]"). Pursuant to those responsibilities, the Secretary possesses broad and express authority to promulgate appropriate immigration regulations. *See id.* § 1103(a)(3) (the Secretary "shall establish such regulations; . . . issue such instructions; and perform such other acts as he deems necessary for carrying out his authority under the provisions of this chapter."). The Secretary has statutory authority to enter into agreements with State and local governments for the housing of noncitizens detained under provisions of the immigration laws. *Id.* § 1103(a)(11). The

[1] While the rule refers to the Immigration and Naturalization Service, the functions of the Service and all authorities with respect to those functions transferred to the Department of Homeland Security on March 1, 2003, and the Service was abolished on that date pursuant to the Homeland Security Act of 2002 and the Department of Homeland Security Reorganization Plan.

Secretary "shall have control, direction, and supervision of . . . all the files and records of the Service." *Id.* § 1103(a)(2).

Here, Plaintiffs allege that they submitted two requests for records under FOIA and three requests under the Michigan state equivalent but because of 8 C.F.R. § 236.6, they have not been able to obtain "critical" records from their requests. *See* Compl. ¶ 33 (three state FOIA requests), *id.* ¶ 34 (two federal FOIA requests), *id.* ¶ 52 ("ICE's production did not include a large set of critical records created and maintained by Calhoun County[.]"). For the requests related to Jilmar Ramos-Gomez, Plaintiffs settled the cases. *Id.* ¶ 47, 51. For the requests related to Luisa Fernanda Martinez Orozco, Plaintiffs have filed suit in the Eastern District of Michigan to compel the production of documents related to the federal request. *Id.* ¶ 61 (explaining that Plaintiffs filed suit in the Eastern District of Michigan under case caption *ACLU of Michigan v. ICE*, Civ. A. No. 24-12466). The parties there stipulated to an order for the monthly production of documents beginning on May 15, 2025. *See* Order, *ACLU of Michigan v. ICE*, Civ. A. No. 24-12466 (Apr. 25, 2025), ECF 22.

Plaintiffs allege that others – who are not parties to this case – have filed FOIA requests but because of 8 C.F.R. § 236.6, the others have similarly not been able to obtain the "critical" records sought. Compl. ¶ 63 (alleging the family of Jesse Dean Jr. submitted requests and that for the federal request "the family did not receive any records in response to their federal FOIA request until a year later" and "[e]ven then, ICE did not produce critical records[.]"); *id.* ¶ 67 ("The ACLU of Michigan's sister affiliates in Florida, Massachusetts, Minnesota, Pennsylvania, and Rhode Island have also faced similar problems when they submitted public records requests to counties that contract with ICE.").

On January 22, 2025, Plaintiffs filed suit under the APA, claiming that 8 C.F.R. § 236.6 is in excess of statutory jurisdiction, authority, or limitations under 5 U.S.C. § 706(2)(C), and that it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under 5 U.S.C. § 706(2)(A). Compl. ¶¶ 72-84. Defendants moved to dismiss the case, arguing that Plaintiffs failed to state a claim under the APA because FOIA provides an adequate remedy, and if the Court were to construe Plaintiff's case under FOIA or if Plaintiff were to amend the complaint to add a FOIA claim, there would be no case or controversy because Plaintiffs do not ask the Court to compel the disclosure of records tied to a specific request; rather, they seek vacatur of a regulation. Defs.' Mot. Dismiss, ECF 21. The Court denied Defendants' motion to dismiss. Mem. Op. & Order, ECF 27. Defendants now seek summary judgment in their favor.

## LEGAL STANDARDS

### I. <u>Summary Judgment in an APA Case</u>

Normally, to succeed at summary judgment, the movant must show that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). However, the typical standard does not apply to a court's review of a final agency action under the APA. *Jurewicz v. U.S. Dep't of Agric.*, 891 F. Supp. 2d 147, 153 (D.D.C. 2012), *aff'd*, 741 F.3d 1326 (D.C. Cir. 2014). Rather, "[t]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id.* (citation omitted); *see also* Comment to LCvR 7(h) ("This provision recognizes that in cases where review is based on an administrative record the Court is not called upon to determine whether there is a genuine issue of material fact, but rather to test the agency action against the administrative record. As a result, the normal summary judgment procedures requiring the filing of a statement of undisputed material facts is not applicable."). Judicial review is limited to "the whole record or those parts of it cited by a party" that was before an agency when

a decision was made. 5 U.S.C. § 706; *Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 55 (D.C. Cir. 2015); *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008).

## II. Facial Challenge to Final Agency Action

To prevail on a facial challenge to a regulation's validity, the plaintiff, "must establish that no set of circumstances exists under which the [regulation] would be valid." *Ass'n of Priv. Sector Colls. & Univs. v. Duncan*, 681 F.3d 427, 442 (D.C. Cir. 2012); *accord United States v. Salerno*, 481 U.S. 739, 745 (1987). Identifying potential applications of the regulation that could be unlawful is not enough. *Sherley v. Sebelius*, 644 F.3d 388, 397 (D.C. Cir. 2011). And because "[v]irtually *every* legal (or other) rule has imperfect applications in particular circumstances," *Barnhart v. Thomas*, 540 U.S. 20, 29 (2003) (emphasis in original), the Court need not – indeed, cannot – "resolve every hypothetical presented" by the plaintiff, *Nat'l Ass'n of Reg. Util. Comm'rs v. Fed. Energy Regul Comm'n*, 964 F.3d 1177, 1188 (D.C. Cir. 2020); *see also Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 934 F.3d 649, 667-68 (D.C. Cir. 2019). Where a challenged rule does not exceed statutory authority and comports with the APA, the Court "will uphold the provision and preserve the right of complainants to bring as-applied challenges against any alleged unlawful applications." *Duncan*, 681 F.3d at 442.

Here, Plaintiffs seek vacatur of 8 C.F.R. § 236.6. Compl. ¶ 86. Plaintiffs have also repeatedly acknowledged that they are not asking the Court to compel the production of certain records. Pls.' Opp'n Defs.' Mot. Dismiss at 14, ECF 25 ("Plaintiffs are not asking this Court to order Defendants to disclose or publish any specific agency records."); *id.* ("Plaintiffs' claims here do not require this court order disclosure of any particular record under [FOIA]."); *id.* at 15 ("But those FOIA requests are not being litigated here."). The Court recognized in its March 19, 2026, Memorandum Opinion and Order that the "ACLU does not ask the court to compel ICE to

produce . . . any . . . records; it asks the court to review the legality of an agency rule governing what state and local entities may do with certain records." Mem. Op. & Order at 8, ECF 27.

Therefore, under Plaintiffs' characterization of the claims and the Court's Memorandum Opinion and Order, Plaintiffs bring a facial challenge to the regulation rather than a factual challenge to any specific decision. *Brennan v. Dickson*, 45 F.4th 48, 61 (D.C. Cir. 2022) ("[The plaintiff's] claim seeks wholesale vacatur of the Remote ID Rule, so we understand him to be challenging the Rule's facial validity." (citation modified)). Thus, Plaintiffs "must establish that no set of circumstances exists under which the [regulation] would be valid" to obtain the vacatur that they seek. *Brennan*, 45 F.4th at 61 (quoting *Duncan*, 681 F.3d at 442)).

## ARGUMENTS

### I. The Regulation Does Not Exceed Its Statutory Authority

The APA requires a court to "hold unlawful and set aside agency action" found to be, among other things, "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C). "Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). "When the best reading of a statute is that it delegates discretionary authority to an agency, the role of the reviewing court under the APA is, as always, to independently interpret the statute and effectuate the will of Congress subject to constitutional limits." *Id.* at 395.

As explained in the Background section above, under federal law, the Attorney General was – and now the Secretary of Homeland Security is – tasked with the administration and enforcement of the Nation's immigration laws. 8 U.S.C. § 1103(a)(1) ("The Secretary of Homeland Security shall be charged with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens[.]"). Pursuant to those

responsibilities, the Secretary possesses broad and express authority to promulgate appropriate immigration regulations. *See id.* § 1103(a)(3) (the Secretary "shall establish such regulations; . . . issue such instructions; and perform such other acts as he deems necessary for carrying out his authority under the provisions of this chapter."). The Secretary has authority to enter into agreements with State and local governments for the housing of noncitizens detained under provisions of the immigration laws. *Id.* § 1103(a)(11). The Secretary "shall have control, direction, and supervision of . . . all the files and records of the Service." *Id.* § 1103(a)(2).

In light of the explicit, clear congressional language giving the Secretary "control, direction, and supervision of . . . all the files and records of the Service," 8 U.S.C. § 1103(a)(2), the regulation at issue here, 8 C.F.R. § 236.6, providing that ICE controls information related to its detainees in state or local facilities that it contracts with is not "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

## II. The Regulation Is Not Arbitrary, Capricious, or Otherwise Not in Accordance with the Law.

The APA also requires a court to "hold unlawful and set aside agency action" found to be, among other things, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Agency action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *New Mexico Cattle Growers' Ass'n v. U.S. Fish & Wildlife Serv.*, 148 F.4th 755, 764 (D.C. Cir. 2025) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the

facts found and the choice made. *Food & Drug Admin. v. Wages & White Lion Invs., LLC*, 604 U.S. 542, 567 (2025). The scope of this review is narrow, and courts must exercise appropriate deference to agency decisionmaking and not substitute their own judgment for that of the agency. *Id.*

The regulation at issue here – 8 C.F.R. § 236.6 – is not arbitrary and capricious. As explained in the Legal Standards section above, to obtain vacatur of the regulation, Plaintiffs "must establish that no set of circumstances exists under which the [regulation] would be valid." *Brennan*, 45 F.4th at 61 (quoting *Duncan*, 681 F.3d at 442)). There exists a valid application of the regulation that balances the interests of all parties. As the Department of Justice explained in promulgating the rule:

> [T]he rule ensures that any disclosure of information pertaining to federal detainees will be governed by the federal Freedom of Information Act (FOIA), 5 U.S.C. § 552. The FOIA provides generally for disclosure of records by federal agencies, but contains exceptions that Congress believed crucial to the effective functioning of the national government. *See, e.g.*, 5 U.S.C. § 552(b)(1), (7)(A), (C), (E), (F). The rule here ensures that federal interests will be protected by channeling information requests through the FOIA. In addition, the rule guarantees that information regarding federal detainees will be released under a uniform federal scheme rather than the varying laws of fifty states. . . . By channeling requests for information through the FOIA, which contains a privacy exception, the rule also protects detainees' privacy. Just as the government has a substantial interest in protecting legitimate national security, intelligence and law enforcement functions under the FOIA, detainees may have a substantial privacy interest in their names and the personal information connected with their status as detainees. 5 U.S.C. § 552(b)(1), (6), (7)(A), (C), (E). For example, individuals who were originally detained because of their possible connection to terrorism, have an overwhelming interest in not being connected with such activity. And particularly with respect to those individuals cooperating with the government's law enforcement investigations, there are powerful reasons why such persons would wish to conceal their identities and whereabouts. Indeed, other INS regulations expressly shield from disclosure information pertaining to or contained in an asylum application. *See* 8 C.F.R. § 208.6(a). Contrary to some of the commenters' suggestions, the fact that certain detainees may wish to publicly identify themselves, which they are free to do, in no way undermines this assessment.

Final Rule, Release of Information Regarding Immigration and Naturalization Service Detainees in Non-Federal Facilities, 68 Fed. Reg. 4364, 4366 (Jan. 29, 2003).

By publishing the passage above in their final rule, moreover, Defendants articulated a satisfactory explanation for the regulation including a rational connection between the facts found and the choice made. *Wages & White Lion*, 604 U.S. at 567. And because Defendants articulated a satisfactory explanation for the regulation, the Court may not vacate it as Plaintiffs desire. *Brennan*, 45 F.4th 61-65 (rejecting facial challenge to regulation because the appellant did not show that it violated the Fourth Amendment "in every application" but expressing "no opinion on the potential viability of any as-applied" challenge).

Plaintiffs may counter with the specific examples alleged in their complaint and argue those examples show, as a whole, that the regulation can never be valid, but Plaintiffs would be incorrect. If Plaintiffs were to make this argument, then Plaintiffs would be conflating a facial challenge to a regulation with an "as applied" challenge. But Plaintiffs have made it expressly clear that they are not connecting this case to any particular FOIA request, rather they are seeking wholesale vacatur of a regulation. Pls.' Opp'n Defs.' Mot. Dismiss at 14, ECF 25 ("Plaintiffs are not asking this Court to order Defendants to disclose or publish any specific agency records."); *id.* ("Plaintiffs' claims here do not require this court order disclosure of any particular record under [FOIA]."); *id.* at 15 ("But those FOIA requests are not being litigated here."). The Court recognized as much in its March 19, 2026, Memorandum Opinion and Order. Mem. Op. & Order at 8, ECF 27 ("The ACLU does not ask the court to compel ICE to produce . . . any . . . records; it asks the court to review the legality of an agency rule governing what state and local entities may do with certain records.").

Thus, the relevant inquiry is not what did or did not happen in those cases, but whether there can ever be a circumstance when the regulation is valid. *Brennan*, 45 F.4th 61-65. As explained above, there certainly are such circumstances. And to the extent that the examples can be used at all in a facial challenge – assuming without conceding that any of the allegations from the complaint are true – the allegations show, at worst, a few examples of "potential applications of the regulation that could be unlawful [which] is not enough." *Id.* at 61; *Sherley*, 644 F.3d at 397 ("[I]t is not enough for the plaintiffs to show the Guidelines could be applied unlawfully."); *Am. Hosp. Ass'n v. Nat'l Lab. Rels. Board*, 499 U.S. 606, 619 (1991) ("The fact that petitioner can point to a hypothetical case in which the rule might lead to an arbitrary result does not render the rule 'arbitrary or capricious.'").

**CONCLUSION**

For the reasons above, the Court should enter summary judgment for Defendants.

Date: October 5, 2026
Washington, DC

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: /s/ *Devin Iorio*
DEVIN IORIO, D.C. Bar No. 90028306
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
601 D Street, NW
Washington, DC 20530
202- 252-0840

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF MICHIGAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>Defendants. | Civil Action No. 25-0184 (AHA) |

**[PROPOSED] ORDER**

UPON CONSIDERATION of Defendants' motion and the entire record herein, it is hereby

ORDERED that Defendants' motion is GRANTED; and it is further

ORDERED that SUMMARY JUDGMENT be entered for Defendants.

SO ORDERED:

| | |
|---|---|
| ____________________<br>Date | ____________________<br>AMIR H. ALI<br>United States District Judge |